## RUBY S. S. CO. v. JOHNSON & HIGGINS.

Circuit Court of Appeals, Second Circuit.
April 4, 1927.

No. 180.

1. Insurance ⚹103—Credit extended by British underwriters to British brokers, and in turn to American brokers, held to imply no like credit to insured, making broker liable for revoking alleged credit and canceling policy.

That British underwriters extended British insurance brokers 30 days' credit, and that British brokers extended American brokers a like credit, though policies pursuant to British statute acknowledged receipt in full of entire premium, held not to imply a like extension of credit by American broker to insured, making such broker liable for breach of contract in revoking alleged credit and canceling marine insurance policies for nonpayment of premium installment when due.

2. Insurance ⚹103—Time is of essence of contract with broker, affecting time and payment of insurance premiums.

Time is of the essence of a contract between insured and insurance broker, affecting terms of payment of premium.

3. Insurance ⚹103—Insurance broker's acceptance of tardy premium payment created no obligation to extend credit on subsequent installments.

Insurance broker's waiver of prompt payment of installment of premium, and acceptance of payment owing month after it became due, held to create no obligation to grant like extension of credit on subsequent installments, or at least not after reasonable notice that exact performance of contract would be insisted on.

4. Insurance ⚹103—Broker held within its rights in canceling marine policy, fully paid as between insurer and insured, on insured's failure to pay premium.

Where British underwriters issued marine insurance policy, which, pursuant to British statute, recited receipt in full of entire premium, but extended credit to British brokers, who in turn extended like credit to American broker, American broker, on insured's failure to pay premium installment on due date after notice that prompt payment would be insisted on, was within its rights in canceling policy, and not liable for conversion, though policies, as between insurer and insured, were fully paid, and though insurer was unable to replace insurance.

5. Vendor and purchaser ⚹269—Ordinarily unpaid vendor can foreclose lien only by suit or sale on notice.

Ordinarily an unpaid vendor can foreclose his lien only by suit or by sale on notice, which remedy ordinarily affords full protection.

6. Insurance ⚹103—Insured's financial ability to obtain other insurance held not to affect broker's right to cancel marine insurance policy for nonpayment of premium.

Insured's inability through lack of funds to obtain other insurance held not to affect broker's right to cancel marine insurance policies on insured's nonpayment of premium installment on due date.

In Error to the District Court of the United States for the Southern District of New York.

Action by the Ruby Steamship Company against Johnson & Higgins. Judgment for defendants (12 F.[2d] 138), and plaintiff brings error. Affirmed.

Plaintiff bought the steamer Hurona in May, 1919. The insurable interest was about $800,000. The vessel was subject to mort-

gages of $390,000. Defendant as brokers had insured the vessel for plaintiff's vendors. Subsequently at plaintiff's request, defendant procured from British insurers, additional policies. Pursuant to British statute, these policies acknowledge receipt in full of the entire premium; a recital binding as between them and the insured. In fact, however, the British underwriters, pursuant to their custom, had extended a credit to the British brokers who in turn had extended similar credit to the defendant, American brokers. By arrangement between plaintiff and defendant, the former were to pay the latter the premium from the date of the risk, September 10 to November 12, 1919, and thereafter quarterly in advance. Plaintiff delayed the payment of the premiums on the old insurance as well as the first premium on the new insurance until the latter part of October. Shortly after this payment, on November 3d and 7th, defendant notified plaintiff that, unless the next quarterly premium on both old and new insurance were paid promptly at its due date November 12th, noon, defendant would cancel the policies. Defendant had possession of the old policies; it received the new policies from England about November 11th. Plaintiff, although thus notified, failed to make payment on November 12th. On November 17th, defendant, with the approval of the vendors as to the old policies, undertook to cancel both old and new policies as of November 12th. Pursuant to prearrangement it procured new insurance for plaintiff's vendors in substitution for the old policies to the extent of their interest only. On November 25th, the steamer sank at sea; it may be assumed that this was due to a peril originally insured against. The loss was total. The plaintiff was without insurance or in any event without the policies, the production of which was essential in an action against the underwriters.

Lampke & Stein, of New York City (Edward Francis Treadwell, of San Francisco, Cal., and Chauncey E. Treadwell and Henri C. Jacques, both of New York City, of counsel), for plaintiff in error.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (Cletus Keating, Ira Campbell, and Roger B. Siddall, all of New York City, of counsel), for defendants in error.

Before HOUGH, HAND, and MACK, Circuit Judges.

MACK, Circuit Judge (after stating the facts as above). [1] The question presented on this writ of error is whether or not the District Judge erred in directing a verdict for defendant on each of two counts—the first for breach of contract in revoking the alleged customary 30-day credit on the November 12th installment; the second for conversion of the insurance policies by their cancellation, to the alleged damage of the plaintiff in the sum of $410,000.

[2] It is entirely clear from the evidence that on the one hand no credit on the quarterly payment was ever *expressly* given by defendant to plaintiff and on the other hand no right was *expressly* reserved to defendant to cancel the policies or cause them to be canceled in case of default by plaintiff in the payment of any quarterly installment. There was no proof of any credit custom as between the American broker, responsible to his British correspondent, and the insured. The fact that the British underwriters recited payment of the entire premium and thereby looked to the British brokers for its actual payment, that these looked to the American brokers, and that each in turn gave to the other a credit based upon a custom growing out of their mutual relations, furnishes no basis whatsoever for any implication that defendant extended any similar credit to plaintiff. On the contrary, the terms of payment as between them were definitely fixed, quarterly in advance; and, in such a contract, time is of the essence. While defendant was plaintiff's agent to place the insurance in the usual way, in effect it was a vendor of a full paid policy issued for plaintiff's benefit, a policy, however, which could be canceled. This relation of the parties was occasioned by the necessity of defendant assuming the obligation for the payment of the premium to the British brokers. In the absence of custom or agreement to the contrary, plaintiff could not demand or claim any credit period for the reimbursement of its agent or payment to its vendor.

[3] Defendant's indulgence in waiving prompt payment of the September 10th installment and in accepting such payment over a month after it became due created no obligation to grant any extension or credit whatsoever for subsequent installments; at the most it obligated defendant to give reasonable notice to plaintiff that it would thereafter insist upon exact performance. Such notice, however, was given, and on this record there was no question for the jury as to whether it was given in a reasonable time not only before the loss but also before the actual maturity of the premium and before the cancellation of the policies.

The trial court was clearly right in directing a verdict for defendant on the first count. [4] Plaintiff contends strenuously that, in any event, defendant had but a lien on the policies to secure the payment to it of the premium installments; that, on plaintiff's failure to make the November 12th payment, defendant's remedy was to hold the policies, and, in the event of loss, to collect and hold the proceeds as collateral. It denies any right of cancellation of the policies which as between insurer and insured are full paid; it contends that in any event, under the circumstances of its alleged inability to replace the insurance, this cancellation was wrongful.

[5] It may be conceded that title to the policies passed to plaintiff on their delivery to defendant, and that, if cancellation was wrongful, an action for conversion lies. Ordinarily an unpaid vendor can foreclose his lien only by suit or by sale on notice; ordinarily that remedy affords full protection. But, if that were defendant's sole right in the case of such an insurance policy, it would be entirely ineffective in the usual case of no loss. The policy in itself is not the subject-matter of sale to a third person; it has no value except to the insured unless and until a claim arises thereunder. As long as it remains in force, the broker must pay the premium; only by canceling it can he end this liability, or, if he paid in advance, obtain the return of the unearned premium. If, as against the insured, he has only the right of retention and not that of cancellation; he would be compelled to keep the policies in force for his own protection and thus would be compelled to continue giving credit to the insured, even though, as between them, the terms of payment were cash in advance. Clearly, in property of this kind, the broker's right as against the insured to cancel the policies and obtain the return of the pro rata premium or credit advanced by him is the only effective method of foreclosing the lien. And in our judgment, the reservation of a right so to cancel is fairly and properly to be implied as the understanding of the parties to such a contract in which, by their agreement, the premiums are to be paid in advance by the insured to the broker.

[6] Inasmuch, then, as defendant had the right to cancel, at least after fair notice of an intention so to act, plaintiff's inability to procure other insurance cannot bar or delay the exercise of the right; this is conditioned, not upon plaintiff's ability to procure substituted insurance, but upon prompt payment of the premium. Moreover, in this case, the inability to obtain new insurance was due solely to the lack of money to pay the premiums. It follows that the cancellation was proper and that the court did not err in directing a verdict on the second count.

Judgment affirmed.

HOUGH, Circuit Judge, concurred in this decision, but had no opportunity to read the opinion.