MIZING PALOEIAN *vs.* ELIZABETH M. DAY & another.

Suffolk.    November 2, 1937. — March 2, 1938.

Present: FIELD, LUMMUS, QUA, & DOLAN, JJ.

*Estoppel.    Insurance,* Cancellation. *Corporation,* Officers and agents. *Agency,* Knowledge of agent. *Equity Pleading and Practice,* Appeal.

It was not to be inferred from a record on an equity appeal containing an exhibit denominated "Exhibit 8" and references thereto by the trial judge, and no other exhibit, that seven other exhibits had been wrongly omitted from the record, and this court was not precluded thereby from considering the case as on an appeal with a full report of the evidence.

On appeal in a suit in equity heard without oral testimony upon agreed facts, evidence which the parties agreed would be given by witnesses if called, and documentary evidence, this court was in the same position as the trial judge and should draw its own inferences.

After duly cancelling a policy of compulsory motor vehicle liability insurance, the insurer, by accepting payment of a balance of the premium made by the insured in ignorance of the cancellation, became estopped to deny that the policy was in force at a subsequent time when an accident within its coverage occurred.

The fact that the cashier's department of an insurance company, when accepting payment of a premium, did not know of a previous cancellation of the policy by the underwriting department did not relieve the company of the consequences of the acceptance: the company was chargeable with the combined knowledge which all its agents had acquired within the scope of their authority.

BILL IN EQUITY, filed in the Superior Court on February 15, 1936.

The plaintiff appealed from a final decree dismissing the bill, entered by order of *Hurley*, J.

*F. L. Simpson*, for the plaintiff.

*W. P. Snow*, for the defendant American Policyholders' Insurance Company.

QUA, J. The plaintiff has recovered a judgment against the defendant Elizabeth M. Day for personal injuries sustained when he was struck by her automobile on October 11, 1934. He brings this bill under G. L. (Ter. Ed.) c. 175, § 113, and G. L. (Ter. Ed.) c. 214, § 3 (10), to reach and apply to the satisfaction of his judgment the obligation of the defendant American Policyholders Insurance Company, hereinafter called the defendant, as the insurer of Mrs. Day under a compulsory motor vehicle liability policy. The defendant contends that it had cancelled the policy and did not insure Mrs. Day at the time of the accident. The plaintiff contends that the defendant estopped itself from relying upon the cancellation and in effect reinstated the policy by accepting payment of a part of the premium after the cancellation and before the accident.

The case was heard upon a written agreement of the parties stating the facts in detail, stating also that it is agreed that Mrs. Day and her husband "would testify" that at all material times Mrs. Day's residence was "Ruthvin Avenue, Burlington," which was her address in the policy, and stating that "the facts and evidence" agreed to, together with documentary evidence referred to in the agreement, "if introduced, are all the material facts and evidence." The defendant contends that we cannot consider the case "as an equity appeal" because seven exhibits have been omitted from the record, citing *Yoffa* v. *National Shawmut Bank of Boston*, 288 Mass. 422. The only basis in the record for this contention is that at the beginning of the agreement of the parties as printed this appears, " [Exhibit 8]," and that the judge in his findings and rulings mentions "Exhibit 8." We do not think that we should infer from this alone that seven previous exhibits were duly introduced and were allowed to remain in evidence and were wrongly omitted from the printed record. As the case

was heard without oral evidence, we are in the same position as was the trial judge, and it is our duty to draw our own inferences. *Brockton Olympia Realty Co.* v. *Lee,* 266 Mass. 550, 562.

Essential facts agreed to were these: The defendant issued the policy to Mrs. Day on June 30, 1934. The premium was $24.64. Mrs. Day was charged with this amount on the defendant's books. On July 13, 1934, a payment of $13.05 was made on account of the premium, leaving a balance still due of $11.59. On August 24 the defendant mailed by registered mail to Mrs. Day at Ruthvin Avenue, Burlington, a notice of intention to cancel the policy to take effect on September 14, at 12:01 A.M. "The notice was in all respects in the form required by statute, was properly served as there required and was properly executed as there required." Notice was also given to the registrar of motor vehicles. We may here interject that as matter of law the policy was thereby cancelled on September 14 at 12:01 A.M., even though Mrs. Day did not receive her notice, and though it was returned to the defendant by the post office with the notation thereon "unknown." G L. (Ter. Ed.) c. 175, § 113A, as amended by St. 1933, c. 119, § 1. Compare *Taxeira* v. *Arter,* 292 Mass. 537, which was decided upon the law as it stood before the amendment of 1933. On August 31, the registrar mailed by registered mail to Mrs. Day at Ruthvin Avenue, Burlington, notice of his intention to revoke her registration, and on September 14 he revoked her registration and sent her notice of that fact at the same address by registered mail. On September 14 the defendant's underwriting department, which had charge of cancellations, stamped "cancelled" across the face of the defendant's copy of Mrs. Day's policy, but did not notify the cashier and accounting department, which had charge of the collection of money, until October 10. On October 10, the day before the accident, the defendant mailed to Mrs. Day by registered mail at the same address a check for $14.52 as the amount of the return premium due upon the cancellation of her policy and promptly thereafter, but not

until after the accident, tendered her that sum which she refused to accept. The check was returned to the defendant by the post office, "reason 'Addressee unknown.'" Mrs. Day received none of the communications which were mailed to her, and did not know at any time prior to October 11, when the accident occurred, of the cancellation of her policy or of the revocation of the registration of her automobile. At about noon on September 14, which was about twelve hours after the cancellation of the policy became effective, Mrs. Day's husband paid to the defendant on her behalf the unpaid balance of the premium amounting to $11.59. This payment was made to a "receipt clerk in the cashier's cage" of the defendant's cashier and accounting department before that department had been notified of the cancellation of the policy. The clerk gave Mr. Day a receipt marked "Premium on policy M.A. 53702 Paid in full" and signed in the defendant's name. On September 17 a credit for the payment was entered on the record of Mrs. Day's account in the cashier's department. The defendant retained the money without attempting to return it until it mailed Mrs. Day the check which she did not receive for the return premium.

In our opinion the acceptance by the defendant of the balance of the premium after cancellation of the policy estopped the defendant from insisting upon the cancellation as a defence. When Mrs. Day's husband as her agent, unaware of the cancellation, offered the balance of the premium to the defendant's receipt clerk, he was acting upon the premise that a valid policy was in existence. If the policy was not in existence, there was no occasion for making the payment, for upon that theory the only relation remaining between the parties was the defendant's obligation to pay to Mrs. Day a return premium. The defendant knew that it had sent a cancellation notice three weeks before. By accepting the premium without informing Mr. Day of that fact it accepted the premise upon which the premium was offered and confirmed Mrs. Day in the belief that the policy was still in effect. Mr. Day would not have paid the money if he had known that the policy had

been cancelled, and, if he had been informed of that fact, presumably Mrs. Day would have complied with the law by obtaining other insurance or by taking her automobile off the highways. It was the defendant's duty to speak, if it regarded the policy as no longer in existence. Now, after an accident has occurred and a liability has accrued, the defendant cannot shift its position to Mrs. Day's detriment. It is commonly stated in the cases that acceptance of a premium with full knowledge is a waiver or estoppel as to previous lapses or breaches of condition which would avoid the policy. Some of the cases are collected in *Gechijian* v. *Richmond Ins. Co.* 298 Mass. 487, 490. *Hodsdon* v. *Guardian Life Ins. Co.* 97 Mass. 144. *Shea* v. *Massachusetts Benefit Association,* 160 Mass. 289, 294. *Kukuruza* v. *John Hancock Mutual Life Ins. Co.* 276 Mass. 146, 152, and cases cited. *Knights of Pythias* v. *Kalinski,* 163 U. S. 289. The same rule has been followed as to a previous cancellation. *New England Mutual Life Ins. Co.* v. *LeVey,* 264 Mich. 282. *American National Ins. Co.* v. *Smith,* 88 Okla. 90. *North American Accident Ins. Co.* v. *Rehacek,* 123 Ill. App. 219.

In *Gechijian* v. *Richmond Ins. Co.* 298 Mass. 487, we held that the companies did not waive their defences by accepting premiums to which they were entitled in any event, and that the insured could not by his own wrongful conduct deprive the defendants of the benefit of their contracts. Here, however, the defendant was not entitled to receive any further sum on account of the premium after its own voluntary cancellation of the policy, but on the contrary it was obligated to repay as return premium a part of what it had already received. G. L. (Ter. Ed.) c. 175, § 113A (2), as amended by St. 1933, c. 119, § 1. That the defendant owed a return premium on September 14 is the only reasonable inference from the fact that it later offered to return a sum larger than the payment which Mr. Day made on September 14.

No doubt the defendant's receipt clerk was without general authority to reinstate cancelled policies, but she had apparent authority to receive the premium, and the de-

fendant must take the consequences of having received it through her, even if she did not know of the cancellation. The defendant was chargeable with the combined knowledge which all of its agents had acquired within the scope of their authority. *Sarna* v. *American Bosch Magneto Corp.* 290 Mass. 340, 343, and cases cited. See *Rosenthal* v. *Monarch Life Ins. Co.* 290 Mass. 254, 257, 258. The defendant had three weeks in which to inform its cashier and accounting department of the cancellation, if that is material, which we need not decide.

We need not consider what, if any, effect it would have upon the case if Mrs. Day gave a false residence address when she procured the policy on June 30, as we do not think that such an inference should be drawn merely from the return of mail addressed to her beginning about two months later. See G. L. (Ter. Ed.) c. 90, § 34B; *Royal Indemnity Co.* v. *Perry,* 296 Mass. 149.

The plaintiff was entitled to reach and apply to the payment of his judgment the obligation of the defendant to Mrs. Day. The decree must be reversed, and a decree must be entered granting to the plaintiff the relief prayed for.

*Ordered accordingly.*