HAROLD ROZEN & others *vs.* MORRIS COHEN.

Suffolk.    January 3, 1966. — February 8, 1966.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Insurance,* Agent, Broker, Payment of premiums.  *Agency,* Agent's duty of fidelity, Agent's interests, Insurance agent.

Where it appeared that an insurance broker procured a number of re-
newal five year fire insurance policies on certain property and paid the
first year premiums thereon for the owners, that during the period of
the original policies and during some six months after the issuance of
the renewal policies the broker accepted slow and late reimbursement
payments by the owners, that about eight months after the issuance of
the renewal policies there was an altercation between the owners and
the broker respecting a balance still due the broker and the broker was
ordered off the owners' premises, that a few days later the broker re-
quested cancellation of all the policies by the insurers and simultaneously
sent the owners a letter notifying them that the policies were being can-
celled and stating that "perhaps . . . [the owners would] be happier
with another broker," and that the cancellations resulted in increased
expense to the owners with respect to replacement policies, it was held
that the cancellations, in protection of the broker's interests, did not
constitute a violation of any duty or contractual obligation owed by him
to the owners.

TORT OR CONTRACT.    Writ in the Superior Court dated
August 31, 1960.

The action was tried before *Beaudreau, J.*

*Alan G. Miller* for the defendant.

*Arthur E. Nicholson (Harold M. Linsky* with him) for
the plaintiffs.

CUTTER, J.    Cohen presents exceptions to the refusal of
the trial judge (a) to direct a verdict for him upon count 7
of the declaration, asserting breach of contract; (b) to the
failure of the judge to enter a verdict in accordance with
leave reserved; and (c) to give certain requested instruc-
tions.    Other counts (including counts in tort) are not now
in issue.

Count 7 alleges (a) that Cohen "entered into a contract
with" the Rozens to act as their agent "to satisfy . . .

Rozen *v.* Cohen.

[their] insurance needs . . . as determined by . . . [them] and to keep . . . [them] advised of matters pertinent thereto''; and (b) that Cohen "without authority and in breach of its [*sic*] contractual obligations did wilfully induce . . . various insurers . . . to cancel several insurance contracts,'' with the consequence that the Rozens "were unable to obtain the coverage . . . previously afforded, were caused to lose the benefit of the insurance contracts,'' and were required to obtain new contracts at greatly increased cost.   Cohen filed a general denial.   The evidence at the trial in its aspect most favorable to the Rozens is stated below.

Cohen was broker for the Rozens in connection with fire insurance covering two properties (the locus) on Columbus Avenue, Boston.   He procured eighteen policies of fire insurance for a total of $90,000 covering the locus in November, 1952.   The titles to the locus were in the names of "straws" for the Rozens.   The policies were issued in the names of the appropriate "straws" but payments on account of premiums, when made, were by the Rozens.   In November, 1957, the policies were renewed in the same form for five years.   Cohen "attended to renewals and handled other insurance matters concerning" the locus and the Rozens' business.   During the whole period, the Rozens "paid the premiums . . . at irregular times and in undetermined amounts.   Payments were almost always slow and late,'' and until August 5, 1958, Cohen "accepted over-due payments.''

On August 5, 1958, Cohen visited the Rozens' premises and "became involved in a heated dispute with . . . Harold Rozen, in reference to an over-due balance.''   Harold Rozen ordered Cohen from the premises.   On August 7, 1958, Cohen wrote to the general insurance agents, John C. Paige & Company (Paige), requesting cancellation of the policies for nonpayment of premiums.   The Rozens then owed Cohen $59.76 on account of these policies.[1]   A letter, in evi-

---

[1] Cancelled checks and other exhibits indicate that on policies issued in November, 1957, there had been paid $900 on account of total premiums of $959.76.   These payments were in instalments of $300 each on March 7, 1958,

dence, was sent by Cohen on the same date to the attention of one of the Rozens, with a copy to the other. It is quoted in the margin.[2] On August 13, 1958, Paige sent notices, some dated August 12, 1958, cancelling the eighteen policies. The notices did not mention "non-payment as a reason for cancellation." They "were induced by . . . [Cohen's] letter of August 7th."

The Rozens were unable to replace the eighteen policies except at rates in excess of what was paid for the cancelled policies. The total difference in premium from August 23, 1958, until November 28, 1962 (the date of expiration of these five year policies), was $6,366.51. There was a verdict for the Rozens on count 7 in the sum of $7,977.61.

1. We consider first Cohen's exceptions to the judge's refusal to direct a verdict for him upon count 7 and to enter a verdict for him under leave reserved.

Cohen, as broker, in procuring insurance for the Rozens was for limited purposes their agent. See *Schooner Dartmouth, Inc.* v. *Piper,* 349 Mass. 347, 351–352; Couch, Insurance 2d, §§ 25.1–25.4. See, however, G. L. c. 175, § 169. As such, subject to the terms of the agency and within its scope, he was, of course, under a duty of fidelity to them as principals, at least while the agency continued to be in effect. *J. C. Penney Co.* v. *Schulte Real Estate Co.* 292 Mass. 42, 44. *Mackey* v. *Rootes Motors Inc.* 348 Mass. 464, 467–468. See *United States* v. *Drumm.* 329 F. 2d 109, 112 (1st Cir.). This, however, does not mean that Cohen was

---

May 14, 1958, and June 11, 1958. The first payment was thus over three months after the date of the policies and the last incomplete payment over six months from the date of issue, with a balance still due on August 5, 1958, over eight months from the date of issue.

[2] The letter reads in part, "As per our conversation of August 5/58 and . . . your instructions I have marked my records not to renew any policy thru my office in which you have an interest. Please mark your records to that effect also. In addition (as per our conversation . . .) the policies pertaining to the premises on Columbus Ave[nue] under the name of Lennick and Miller [the 'straws' mentioned above], on which there is an unpaid balance are in process of cancel[l]ation. The final adjustment on this will be made after the companies compute the earned premium." A post-script added, "Other than to ask for past due premium dating back to 11/28/57 I don't know what I have done to offend you. In any case perhaps you will be happier with another broker."

thereby precluded from taking appropriate action to protect his own proper interests arising out of the brokerage relationship. See *Ruby S.S. Co.* v. *Johnson & Higgins,* 18 F. 2d 948, 949–950 (2d Cir.), cert. den. 275 U. S. 544. See Restatement 2d: Agency, § 415. See also analogy of a power given for security and of exercise of an agent's lien, *ibid.* §§ 138 (comment d), 418, 464.

The premiums on insurance to be procured, of course, were to be paid by the Rozens. This has not been shown to have been other than the usual insurance brokerage arrangement[3] outlined in the *Ruby S.S. Co.* case, *supra,* under which the insured's broker pays the premiums, when they are due, to the insurer or its general agent and collects them from the insured. We assume that Cohen was under contractual obligation to use reasonable efforts (see *Heaphy* v. *Kimball,* 293 Mass. 414, 418; *Rayden Engr. Corp.* v. *Church,* 337 Mass. 652, 659) to procure the original insurance (which he seems to have done in satisfactory fashion) and perhaps also renewals of that insurance while the broker relationship continued. In any event he was entitled to be indemnified for the cost of any premiums which he had advanced or for which he was liable to the insurers or their agents. See Restatement 2d: Agency, § 439. See also Couch, Insurance 2d, § 25.65. This type of arrangement impliedly calls for premium payments by the insured within a reasonable time unless different arrangements for payments are expressly made. It cannot reasonably be inferred that it is intended that a broker in effect shall be a banker for his insureds for an indefinite period.

The usual standard fire insurance policy (G. L. c. 175, § 99, as amended through St. 1951, c. 478) obviously is based upon the expectation that the insured will pay the

---

[3] For general discussions of various aspects of such arrangements, see *Ide* v. *Aetna Ins. Co.* 232 Mass. 523, 524; *Morton Furniture Co.* v. *Dubuque Fire & Marine Ins. Co.* 287 Mass. 170, 171–172, 174; *Travelers Indem. Co.* v. *National Indem. Co.* 292 F. 2d 214, 219–220 (8th Cir.); *Alliance Ins. Co.* v. *City Realty Co.* 52 F. 2d 271, 274–275 (D. Ga.); *Conner* v. *Zanuzoski,* 36 Wash. 2d 458, 462–463; note, 12 Vanderbilt L. Rev. 839; annotation, 29 A. L. R. 2d 165.

stated premiums, even if such payment is not thereby made a condition precedent to the attaching of the risk. See *Gechijian* v. *Richmond Ins. Co.* 305 Mass. 132, 142. See also *American Mut. Liab. Ins. Co.* v. *Condon,* 280 Mass. 517, 524–525. Acceptance of such policies justifies the implication of a promise by the insured to pay the premiums. See Corbin, Contracts, §§ 144, 562. See also *ibid.* §§ 633, 635. The Rozens' habitual failure to pay the premiums when due, and their slow paying, was conduct which would warrant Cohen in taking reasonable measures to protect his interest in any balances due to him, and in recovery of advances by him of premiums made to the insurers (or the insurers' general agents), even by requesting the insurers to exercise the broad power of cancellation reserved by them under the policy.[4]

The question for decision is whether the jury could reasonably conclude that Cohen committed a breach of contract by protecting his interests and asking the insurers to cancel the policies for nonpayment of premiums. It is not argued that there was noncompliance by the insurers with the provisions of G. L. (Ter. Ed.) c. 175, § 187C (as amended through St. 1936, c. 215) or § 187D concerning such cancellations.

The jury would not have been warranted in concluding that any agency or fiduciary relationship survived the conference of August 5, 1958. Such a conclusion would be wholly inconsistent with the evidence (a) of the considerable history of slow, late premium payments; (b) of the dispute concerning overdue payments on August 5 when Cohen was ordered from the Rozens' premises; and (c) of Cohen's letter of August 7, 1958 (fn. 2), when there still

---

[4] Seasonable cancellation (a) would prevent the earned premiums under the policies from exceeding the amount of premiums in fact paid to Cohen by the Rozens, and (b) would mean return of any unearned premiums advanced by Cohen to the insurers or their general agents in behalf of the Rozens. It has been stated that one in Cohen's position may in effect be subrogated to the rights of the insurer against the insured. See Appleman, Insurance Law and Practice, § 8013. See also *District Agency Co. Inc.* v. *Suburban Delivery Serv. Inc.* 224 Md. 364, 370–372. He need not be remitted to costly litigation to recover the premiums from the insured. See *Conner* v. *Zanuzoski,* 36 Wash. 2d 458, 463.

remained a balance of overdue premiums of $59.76 on policies issued in November, 1957, more than eight months earlier.

The Rozens have not shown either that they had made any express advance arrangement with Cohen for premium payments in instalments, or that, after August 5, they had any reasonable basis, because of his prior acquiescence in late payments, for expecting further consideration from Cohen. His August 7 letter (fn. 2) confirmed this. They have not shown any tender to him or to the insurers of the $59.76 balance of overdue premiums before August 12, 1958, the date of the earlier dated cancellation notices.

We recognize that Cohen's past forbearance in respect of overdue premiums might have estopped him to cause cancellation of the policies without reasonable notice that there would be no further forbearance. See Appleman, Insurance Law and Practice, § 8551 et seq.; Couch, Insurance 2d, §§ 32.263, 32.295, 32.336. See also Corbin, Contracts, §§ 721, 722. As to the facts creating such an estoppel, the Rozens had the burden of proof. *United States* v. *Dickinson,* 95 F. 2d 65, 68 (1st Cir.). We think that the jury could not reasonably conclude that the events of August 5 and the letter of August 7 (fn. 2) were inadequate notice of the cessation of forbearance concerning the Rozens' habitual delay in paying premiums. The Rozens thereafter should have known that failure to pay at once the remaining premium balances then due involved serious risk.

The Rozens argue that Cohen could have protected himself adequately by cancelling only a few of the policies, thus obtaining in refunds of unearned premiums more than the sum of $59.76 then unpaid on account of the first year's premiums on the eighteen policies. Cohen, however, could reasonably have regarded the Rozens' delays and conduct to and including August 5, 1958, as a material breach of whatever contract of agency had theretofore existed. See Restatement 2d: Agency, § 415. He was free to rid himself of a brokerage relationship in which his principals had

been long in default and which he could regard as burdensome. The policies were five year policies and Cohen was not required to subject himself, with respect to any of the policies, to the possibility of further delayed payments by the Rozens during the remaining years of the policies.

A verdict should have been directed for Cohen on count 7.

2. What has been said makes it unnecessary to consider Cohen's other exceptions.

*Exceptions sustained.*