R & F Micro Tool Co., Inc. *vs.* General American Life
Insurance Company.[1]

Plymouth. January 16, 1987. — March 26, 1987.

Present: Greaney, C.J., Kaplan, & Armstrong, JJ.

*Insurance,* Life insurance: reinstatement; Payment of premiums. *Estoppel.*
*Waiver. Practice, Civil,* Summary judgment, Appeal. *Consumer Protec-*
*tion Act,* Insurance.

Where premiums due from an employer on a policy of group insurance
remained unpaid at the expiration of a stated grace period and where
the insurer, before the end of the grace period, had informed the employer
that its former practice of offering reinstatement of the policy, after
lapse, would not be continued, the policy was to be treated as having
lapsed in accordance with its terms; nor did the insurer's receipt from
the employer of a payment, from which it deducted the amount due it
through the expiration date of the grace period and refunded the balance,
have the effect of overcoming the lapse as to a death claim accruing
before the tender of payment. [695-699]

Where the materials before the judge who heard a motion for summary
judgment suggested that one of the claims in the action remained unde-
cided, an appeal from the allowance of summary judgment was inappro-
priate in the absence of a certificate granted under Mass.R.Civ.P. 54(b).
[699-700]

CIVIL ACTION commenced in the Superior Court Department
on June 13, 1984.

The case was heard by *Guy Volterra,* J., on motions for
summary judgment.

*Joseph H. Skerry, III,* for the defendant.
*Kathleen W. Meaney* for the plaintiff.

---

[1] As indicated in the text below, R. & F Micro Tool Co., Inc., defendant
in the main action against it by Pamela J. Dow, as third-party plaintiff
impleaded General American Life Insurance Co., third-party defendant.

KAPLAN, J. Howard Dow, an employee of R & F Micro Tool Co., Inc. (hereafter "employer"), died on August 5, 1982. His widow, Pamela Dow, sued the employer for benefits under a group life, accidental death, and medical care insurance policy issued to the employer by General American Life Insurance Co. ("insurer"), alleging breach of contract and violation of G. L. c. 93A (the Consumer Protection Act). The employer impleaded the insurer, claiming indemnification on contract grounds and also alleging violation of c. 93A. Upon motions for summary judgment by Pamela Dow against the employer, by the employer against the insurer, and by the insurer against the employer, a judge of the Superior Court allowed Pamela Dow's motion and the employer's motion and impliedly denied the insurer's motion, all, apparently, on the contract ground. The insurer appeals from the allowance of summary judgment in the employer's favor and from the denial of its own motion.

We reserve a procedural matter to the end, and speak to the merits as disclosed in the materials submitted on the summary judgment motions. The group policy called for premium payments by the employer in advance on the first day of each month, with a grace period of thirty-one days, meaning that, if payment of a defaulted premium was made within the grace period, the policy continued in force, otherwise it lapsed at the end of that period. The employer habitually failed to pay the monthly premiums when due, and on several occasions failed to make the premiums good within the grace period. The insurer wrote to the employer on three of these occasions confirming that the policy had lapsed, but saying that "[r]einstatement of the policy will be considered upon receipt of all premiums due to date, if payment is received within the next fifteen days." The employer paid up and the policy was reinstated.

There was a change in the summer of 1982. On June 3, 1982, the insurer wrote to the employer noting that the policy had lapsed at the end of a grace period on April 30, 1982, and again offered reinstatement if payment was made within fifteen days. On July 21, 1982, the insurer wrote to the employer acknowledging receipt of the overdue April premium and

reinstating the policy as of April 30. The letter concluded, however, with the following: "Also, be informed that our records show a past history of delinquent premiums. Therefore should it again be necessary to terminate, because of delinquent premiums, we will not be able to offer reinstatement and the termination will be final."

The employer failed to pay the premium due on July 1, 1982, on time or during the grace period. Similarly the employer failed with respect to the August 1 premium. On September 23, 1982, the insurer wrote to the employer's president (previous correspondence had been addressed to the office manager) stating that the policy had lapsed on July 31, 1982. There was no offer to reinstate the policy.

An aftermath is to be noted. In early October, 1982, the employer sent the insurer a check for $12,419.07, the amount due for the July and August premiums. This check was deposited on October 12. On October 21, the insurer sent the employer's president a letter enclosing a refund of $6,091.41 (the difference between $12,419.07 and the amount of the premium covering the period July 1-July 31)[2] and observing that the letter of September 23 had not offered a possibility of reinstatement and that final lapse had occurred on July 31. Meanwhile, another branch of the insurer had been processing the Dow death claim. The employer submitted the claim on August 18. The insurer's "claim specialists" began routine investigation, and on August 31 and October 6, 1982, requested information about the amount of Dow's salary. Sometime in October the claims people noted the policy lapse and a check that had been made out to Pamela Dow, but not sent, was voided.

There is nothing suspect about a contract term that causes a policy to lapse where a premium remains unpaid at the expiration of a stated grace period. Such policy provisions have been duly enforced. See *Shurdut* v. *John Hancock Mut. Life Ins. Co.,* 320 Mass. 728, 730 (1947); 6 Rhodes, Couch's Cyclopedia of Insurance Law § 32:132, at 415-416 (2d ed.

---

[2] The policy made specific reference to the insured's premium obligation for coverage during the grace period in such circumstances.

rev. 1985). The employer grants that there was a lapse on July 31, 1982, but it contends that by "waiver" on the part of the insurer, or an "estoppel" against the insurer, the policy should be considered reinstated, presumably for the month of August, 1982. Had the insurer given no warning to the employer that its practice of offering reinstatement of a lapsed policy was at an end, a claim of estoppel based on the past practice might have been upheld, even though the employer continued in its delinquency of payment until October. See *Crowley* v. *A.O.H. Widows' & Orphans' Fund,* 222 Mass. 228, 232 (1915); *Rozen* v. *Cohen,* 350 Mass. 231, 236 (1966). See also *Kukuruza* v. *John Hancock Mut. Life Ins. Co.,* 276 Mass. 146, 150-151 (1931); 6 Couch's, *supra,* §§ 32:295, 32:336. Here, however, a warning was given by the letter of July 21 that reinstatement would no longer be offered after a policy lapse. The insurer was acting in the ordinary course of business before the death[3] and left the employer with time to save the policy from the lapse which was in prospect for July 31. That the warning should be given the effect of denying the employer any claim to reliance on earlier practice and of remitting it to the terms of the policy governing lapse is the teaching of *Rozen* v. *Cohen, supra.*[4] See also *Hagin* v. *Firemen's Fund Ins. Co.,*

---

[3] The employer suggests that the insurer would have overlooked its warning and accepted the overdue premiums and again reinstated the policy if Howard Dow had not died. That may be (we cannot tell) but it does not seem a fair basis for holding the insurer in the face of its warning.

[4] In *Rozen,* a broker, on behalf of the insured, had paid premiums owed on fire policies upon the understanding that the insured would reimburse him. The broker had tolerated habitual delays on the part of the insured in making reimbursement. After an argument on August 5 between broker and insured over an amount owing by the insured, the broker notified the insured by the letter of August 7 that the policies on which there were unpaid balances were in process of being cancelled, leaving the insured with a short time in which to make good those balances. The insured did not cover, the policies were cancelled, and the insured sued the broker for the losses suffered in switching to new policies at higher rates. The court said (350 Mass. at 236): "We recognize that Cohen's past forbearance in respect of overdue premiums might have estopped him to cause cancellation of the policies without reasonable notice that there would be no further forbearance. See Appleman, Insurance Law and Practice, § 8551 et seq.; [6] Couch, Insurance 2d,

88 Ariz. 158, 161-163 (1960); *Peterson* v. *Allstate Ins. Co.,* 164 Cal. App. 2d 517, 520-521 (1958); *Schwer* v. *Benefit Assn. of R.R. Employees, Inc.,* 153 Ohio St. 312, 321-323 (1950); 3A Corbin, Contracts § 722, at 381 (1960); 6 Couch's, *supra,* §§ 32:374, 32:375. If further leeway were to be allowed the employer, it is not easy to say how it might be defined.

The employer argues that the insurer's receipt or deposit of the check for $12,419.07 should be given the effect of overcoming the lapse and reinstating the policy, presumably for August, so that the claim arising from the death on August 5 would be covered. First, it is only an unconditional acceptance of late payment that could work an estoppel and produce any such result. See *Paloeian* v. *Day,* 299 Mass. 586, 590 (1938); *Bogosian* v. *New York Life Ins. Co.,* 315 Mass. 375, 382 (1944); *Dolan* v. *Utica Mut. Ins. Co.,* 650 F. Supp. 851, 853 (D. Mass. 1986). Cf. *Bousquet* v. *Transportation Ins. Co.,* 354 Mass. 152 (1968). Here there was no such acceptance; in line with the earlier warning, the insurer, after deducting the amount due it for the period through July 31, returned the balance to the employer. Second, any conceivable estoppel would not extend to a casualty that occurred following the lapse and before the employer's tender of payment to secure reinstatement: the employer could not assert that it justifiably relied on a so-called "acceptance" as covering a death claim that had already accrued before the tender. See *Dolan* v. *Utica Mut. Ins. Co., supra* at 854-855; *Schifalacqua* v. *CNA Ins. Co.,* 567 F.2d 1255, 1258 (3d Cir. 1977);[5] *Brazil* v. *Giuffrida,*

§§ 32.263, 32.295, 32.336 [2d ed.]. See also [3A] Corbin, Contracts, §§ 721, 722 [1960]. As to the facts creating such an estoppel, the Rozens had the burden of proof. *United States* v. *Dickinson,* 95 F.2d, 65, 68 (1st Cir. [1938]). We think that the jury could not reasonably conclude that the events of August 5 and the letter of August 7 . . . were inadequate notice of the cessation of forbearance concerning the Rozens' habitual delay in paying premiums. The Rozens thereafter should have known that failure to pay at once the remaining premium balances then due involved serious risk."

[5] "It is not logical to argue that plaintiff relied to his detriment during the period of lapse upon CNA's actions taken after the accident. Nor has plaintiff alleged any acts or omissions by CNA prior to the accident upon which he relied. CNA did nothing to induce plaintiff to believe that this policy was in force at the time of the accident. And even if CNA can be said to have

763 F.2d 1072, 1075-1076 (9th Cir. 1985); 6 Couch's, *supra*, § 32:85, at 362-364. See also, by way of analogy, G. L. c. 175, § 108(3)(*a*)(4), second sentence. Compare *Paloeian* v. *Day,* 299 Mass. at 589 (policy reinstated before accident).[6]

We conclude that the employer deserved to fail in its motion for summary judgment, and the insurer to succeed on its contrary motion.

To turn to procedure, the judge below, ruling without opinion, allowed the employer a conventional contract measure of recovery. It is not possible to say what he intended with respect to the c. 93A phase of the case; but the fact that the parties did not address themselves plainly to this in their submissions on summary judgment, and the further circumstance that a c. 93A recovery might exceed the contract measure, suggest that the c. 93A claim has been left undecided. Thus the action has not been brought to final judgment and, as no certificate was sought or granted under Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974), we think the appeal should be dismissed. As the merits of the summary judgment motions were briefed, we have chosen to express our views upon them. See *Freedman* v. *Schneider,* 7 Mass. App. Ct. 852, 852-853 (1979); *Weld* v. *Trafton,* 10 Mass. App. Ct. 879 (1980). It would be premature to discuss

---

later induced the belief that the policy had been revived, plaintiff's reliance on that belief in no way contributed to his failure to obtain coverage for the earlier accident. No implied waiver can therefore be found. And though plaintiff does not here argue an estoppel, it is clear that this same lack of prejudicial reliance would be fatal to that argument as well." *Schifalacqua* at 1258.

[6] The fact that the "claims specialists" inquired about the Dow death claim does not raise an estoppel. It may be viewed as a precautionary measure; at most it indicates that the left hand of the insurer knew not what the right hand was doing. Irrelevant, too, is the fact that a broker received a commission on the $12,419.07.

the c. 93A claim, but what we have said above about the absence of estoppel has obvious relevance.[7]

The appeal is dismissed without costs to either party.

*So ordered.*

---

[7] It may be worth observing that our consideration of the contract basis of the action was not affected by the (possible) availability of relief under c. 93A; that is, we did not take a strict or narrow view of the contract law in the expectation that c. 93A might provide amelioration. If the existence of the statute were to have the collateral effect of hardening the conventional fields of contract, tort, etc., we would face an unhappy recrudescence of a distinction something like that in olden times between Law and Equity.