Hamlin, J.
INTRODUCTION
This case involves a claim by the plaintiff, Louis Rotundi, under a policy of insurance issued by the defendant, Arbella Mutual Insurance Company. Rotundi’s claim for insurance coverage arises out of an automobile accident occurring on February 11, 1996 in which Rotundi suffered personal and property damages. Arbella denied coverage under the policy, claiming the policy had been cancelled prior to the date of the accident. This matter is currently before this Court on cross-motions for summary judgment. For the reasons discussed below, the defendant’s motion for summary judgment is ALLOWED and the plaintiff s cross-motion for summary judgment is DENIED.
BACKGROUND
The materials submitted by the parties in support of and in opposition to these motions present the following facts. On October 19, 1995, Arbella issued a renewal policy to Rotundi to insure a 1995 Chevrolet Lumina. The policy term extended from October 19, 1995 through October 19, 1996. The policy contains the following clause:
We can cancel all or any part of this policy including your Compulsory Insurance if:
*419 1. You have not paid your premium on this policy.
2. We find that you were responsible for fraud or material misrepresentation when you applied for this policy or any extension or renewal of it.
3. Your driver’s license or auto registration has been under suspension or revocation during the policy period.
According to Arbella’s policy, if premium payment from the policyholder is not received by the date on an invoice, Arbella will determine if the policyholder has enough equity in the policy to cover the insured to the next billing cycle. If the policyholder does have enough equity, a new invoice is forwarded at the next billing cycle. If there is not enough equity, Arbella will send a Statutory Notice of Cancellation to the address listed on the coverage selection page. This Notice informs the policyholder that the policy will be cancelled if the amount due is not paid on or before the cancellation date. By law, the Notice must be sent to the insured at least twenly days prior to the effective date of cancellation. If the policyholder still fails to make the required payment by the cancellation date, the policy will be cancelled and Arbella will then forward a Notice of Final Cancellation to the policyholder.
Since 1994, Boston Financial Data Systems (BFDS) has been Arbella’s vendor for processing and depositing the payments of premiums by Arbella’s customers.[1] After the deposits are made and the processed information transferred to Arbella, an Arbella billing and collection clerk reviews a printout of all payments made on cancelled policies. If the policyholder still owed any premium amount up to the date of cancellation, that amount is deducted from the check and the remainder is issued as a refund to the policyholder. The refund check, however, is not issued for fourteen days to be certain that the check was drawn on sufficient funds. If the policyholder had not owed any premium up to the date of cancellation, Arbella would issue a refund check in the amount of the check sent by the policyholder, after waiting the same fourteen day period. Arbella will only reinstate a cancelled policy if the policyholder requests reinstatement of his policy, brings current all outstanding payments, and signs a “No Loss Form."
On November 28, 1995, Arbella forwarded a bill to Rotundi requiring payment of $107.81 on or before December 18, 1995. When Arbella did not receive any payment, it forwarded to Rotundi a Statutory Notice of Cancellation on December 29, 1995, informing him that if he did not make payment of $218.92 on or before January 20, 1996, his policy would be cancelled on that date. On January 15, 1996, Arbella received a check for $107.81 from Rotundi. On January 28, 1996, Arbella determined that Rotundi had paid $111.11 less than required to prevent the cancellation of his policy. Arbella thus cancelled Rotundi’s policy and issued a check for $7.89 to Rotundi as a refund of the premium he owed from October 19, 1995 through January 20, 1996. On January 29, 1996, Arbella forwarded a Notice of Final Cancellation to Rotundi advising him that his insurance policy had been cancelled on January 20, 1996.
On February 7, 1996, BFDS received a check for $218.92 from Rotundi which was processed and deposited into Arbella’s account in accordance with Arbella’s standard billing practice. On February 8, 1996, the Arbella billing and collection clerk discovered that Rotundi’s payment was made on a cancelled policy and began the process of issuing a refund of this payment. After waiting the standard fourteen days, on February 22, 1996, a check for $218.92 was issued to Rotundi. On February 11, 1996, Rotundi was involved in an automobile accident in which Rotundi suffered personal and property damage. Shortly thereafter, Rotundi informed Arbella of the accident and requested Personal Injury Protection (PIP), medical payment, and property damage coverage pursuant to the benefits of his automobile insurance policy. Arbella denied coverage, claiming Rotundi’s policy was can-celled prior to the date of the accident.
DISCUSSION
This Court grants summary judgment only where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). In this case, as evidenced by their cross-motions for summary judgment, the parties agree that there are no genuine issues of material fact to be decided. Accordingly, summary judgment is the proper means to decide the issues of law in dispute.
General Laws c. 175, §113A permits an insurer to cancel an insurance policy for nonpayment of the required premium provided that the insurer sends notice of cancellation to the insured and the insured fails to pay the full amount due by the cancellation date. The notice of cancellation must be sent at least twenty days before the effective cancellation date. Id. In addition, any return premium must be delivered to the insured. Id. Here, it is undisputed that Rotundi received a notice of cancellation in compliance with the statute. It is also undisputed that Rotundi failed to make the required premium payment by the effective cancellation date. Rotundi, however, argues that Arbella is precluded from asserting that his insurance policy was not in effect on the date of his accident based on the doctrines of estoppel or waiver. Rotundi’s central argument is that when BFDS deposited Rotundi’s check on February 7, 1996, it accepted payment on behalf of Arbella and the policy was reinstated.
Massachusetts courts agree that once cancellation occurs, “it cannot be cured by subsequent acts of the insured in the absence of consent by or waiver or *420 estoppel of the insurer.” Couch on Insurance 3d, §76.22 (1986). See also Merrimack Mutual Fire Ins. Co. v. Nonaka, 414 Mass. 187, 189 (1993) (citing Sweeney v. Frew, 318 Mass. 595, 598 (1945)). Estoppel is an equitable doctrine designed to avoid injustice. It applies where one party engages in conduct or makes representations which induce the other party to do something different from what he or she otherwise would have done, and detriment results. Couch on Insurance 3d, §78.13; see also Turnpike Motors, Inc. v. Newbury Group, Inc., 413 Mass. 119, 123 (1992) (quoting Cleaveland v. Malden Sav. Bank, 291 Mass. 295, 297-98 (1935)), For example, in Paloeian v. Day, 299 Mass. 586, 589 (1938), the insured, unaware that her policy had been canceled, made a premium payment at the insurance company office on the day the cancellation was to take effect. The insured received a receipt marked “Paid in Full.” Id. Further, the insurer held the check for almost a month before attempting to refund the monies. Id. The Supreme Judicial Court held that the insurer was estopped from claiming the policy was canceled because the insured may have refrained from procuring other insurance in the reasonable belief that her policy was in effect. Id. at 590-91. More recently, Massachusetts courts have stated that only an unconditional acceptance of an overdue premium “could work as estoppel and produce” a reinstatement of a canceled policy. R&F Micro Tool Co. v. General American Life Ins. Co., 23 Mass.App.Ct. 694, 698 (1987).
Waiver is the “voluntary or intentional relinquishment of a known right.” Merrimack, 414 Mass, at 189. Acceptance of premiums by the insurer has been held to constitute a waiver of defects in reinstatement. 3A John A. Appleman & Jean Appleman, Insurance Law andPractice, §2052 at 556 (1967and Supp. 1997). The court in McMillon v. Old Republic Life Insurance Co., 33 Ill.App.3d 658, 342 N.E.2d 246, 249 (1975), agreed that in order for waiver to apply, there must be some retention of the payment by the insurer, or other action by it which is inconsistent with its claim that it did not accept the late payment.
Here, based on the summary judgment record, Rotundi has failed to raise a genuine factual dispute as to whether Arbella reinstated his policy, whether Arbella is estopped from canceling Rotundi’s policy, or whether Arbella waived its right to cancel his policy. It is undisputed that Rotundi did not fulfill Arbella’s reinstatement requirements: Rotundi mailed a check for the owed premium amount to Arbella after cancellation, but he neither requested reinstatement of his policy nor completed a No Loss Form prior to the date of his accident.[2] As such, Rotundi’s actions do not operate to reinstate his insurance policy without some actions by Arbella that would constitute estoppel or waiver of the cancellation.
Estoppel will not operate to reinstate Rotundi’s policy because Arbella made no representation and engaged in no conduct that would induce Rotundi to believe his policy was in effect.[3] Arbella did not send Rotundi any receipt or notice that his policy was paid in full or that the policy had not been canceled.[4] Further, the depositing and processing of Rotundi’s overdue premium by BFDS did not operate as an unconditional acceptance of the premium by Arbella because BFDS merely negotiated the payment. See Samagaio v. Davidson, 6 Mass.App.Ct. 773 (1979) (insurance company’s application of monies to amounts owed on the canceled policy did not reinstate the policy). In fact, there is evidence on the record that Arbella rejected Rotundi’s premium payment. First, Arbella issued the $7.89 refund check on January 29, 1996, prior to the accident in question, showing that it intended to cancel Rotundi’s policy effective January 20, 1996. Second, immediately upon receipt of Rotundi’s February 7, 1996 payment, Arbella undertook to refund the money. Arbella retained Rotundi’s payment for only the standard two weeks to be certain that the check was drawn on an account with sufficient funds. As such, it is clear that Arbella did not unconditionally accept Rotundi’s premium.[5] It is thus clear that Arbella is not estopped from canceling Rotundi’s policy.
The waiver theory also does not apply to reinstate Rotundi’s policy. As stated above, Arbella did not unconditionally accept Rotundi’s payment. Further, there was no retention of the premium payment beyond the time to assure sufficient funds in the account from which the check was drawn. As such, Arbella properly canceled Rotundi’s policy and neither waiver nor estoppel theories will operate to reinstate the policy. Accordingly, Arbella is entitled to summary judgment.
ORDER
For the foregoing reasons, the defendant’s motion for summary judgment is ALLOWED and the plaintiff s cross-motion for summary judgment is DENIED.

BFDS processed some 267,544 checks for Arbella in January of 1996.

Because Rotundi submitted an untimely No Loss Form dated June 8, 1997, this Court did not consider it for the purposes of this motion.

In fact, Rotundi had had previous experience with Arbella’s cancellation policy. Rotundi had a second insurance policy with Arbella for which he failed to pay premiums. On May 30, 1995, Rotundi received a Notice of cancellation on that policy. When Rotundi failed to pay the amount owed, his policy was cancelled.

Over the course of the previous year, Arbella had mailed two other Notices of Cancellation to Rotundi. In both instances, Rotundi sent the full premium payment before the cancellation date and avoided cancellation of his insurance policy. In both instances, after payment had been received, Arbella mailed Rotundi a notice advising him that his policy was not canceled.

If Rotundi claims that he relied on Arbella’s actions in believing his policy was in effect, his reliance would have been unreasonable, especially in light of Arbella’s past conduct on the cancellation issue.