LOUIS A. ROTUNDI *vs.* ARBELLA MUTUAL INSURANCE COMPANY. No. 99-P-486. March 5, 2002. *Insurance,* Motor vehicle insurance, Cancellation, Waiver. *Estoppel.*

On February 11, 1996, the plaintiff, Louis A. Rotundi, had a single-car accident. He made a claim against his insurer, Arbella Mutual Insurance Company (insurance company), for medical payments, property damage, and personal injury protection (PIP) benefits. The insurance company denied Rotundi's claim on the ground that his renewal automobile insurance policy had been canceled for nonpayment of premiums due, effective January 20, 1996, three weeks before the date of the accident. On appeal from summary judgment for the insurance company, Rotundi argues, as he did below, that the insurance company was estopped from denying his claim, or in the alternative, that the insurance company waived its defense of lack of coverage.

There is no dispute that the insurance company satisfied the statutory notice provisions required to cancel a motor vehicle liability policy, see G. L. c. 175, § 113A(2); that Rotundi received the notices; that the policy was canceled effective January 20, 1996, as the notices warned; and that the insurance company notified the Registry of Motor Vehicles of the cancellation as required, see G. L. c. 90, § 34H, as well as Rotundi's insurance agent. Nor is there any dispute that before the cancellation Rotundi sent a check for less than the amount he owed; that on January 26, 1996, the insurance company sent Rotundi a refund check marked "policy cancellation"; that Rotundi did not send a check for the amount necessary to avoid the January 20 cancellation until February 3, 1996, two weeks after the effective date of the cancellation; that the insurance company did not receive the second check until February 7, 1996; that the insurance company refunded the second check after a waiting period to ensure that the check cleared; and that Rotundi did not file a "no loss statement" until June, 1997. Neither of the checks Rotundi sent was accompanied by any document indicating Rotundi's intent to reinstate his policy.

1. *Estoppel.* The doctrine of estoppel does not apply to these facts. "The basis of an estoppel is a representation . . . intended to induce a course of action on the part of the person to whom the representation is made, and where, as a consequence, there is detriment to the person relying on the representation and taking the action." *Noble* v. *John Hancock Mut. Life Ins. Co.*, 7 Mass. App. Ct. 97, 99 (1979), quoting from *Capozzi's Case*, 4 Mass. App. Ct. 342, 347 (1976). "In order to work an estoppel it must appear that one has been induced by the conduct of another to do something different from what otherwise would have been done and which has resulted to his harm. . . ." *Royal-Globe Ins. Co.* v. *Craven*, 411 Mass. 629, 635 (1992), quoting from *Di-Marzo* v. *American Mut. Ins. Co.*, 389 Mass. 85, 112 (1983). Because Rotundi has not carried his burden of showing that there was either a representation or reliance, his argument that the insurance company is estopped from denying coverage fails. See *Merrimack Mut. Fire Ins. Co.* v. *Nonaka*, 414 Mass. 187, 189 (1993). See also *Clickner* v. *Lowell*, 422 Mass. 539, 544 (1996) (party asserting estoppel theory has heavy burden).

*Paloeian* v. *Day*, 299 Mass. 586 (1938), on which Rotundi relies in support of his estoppel argument, is readily distinguishable. In that case the insured had not received any of the communications the insurance company had mailed to her regarding the company's intent to cancel the policy for nonpay-

ment of the premium (the final notice at least was returned with the notation that the addressee was unknown). In addition, the insured's husband had paid the unpaid balance of the premium to "a 'receipt clerk in the cashier's cage' of the [insurance company's] cashier and accounting department," twelve hours after the cancellation became effective. *Id.* at 589. The clerk gave the husband a receipt marked "paid in full" signed in the name of the insurance company. *Ibid.* The court ruled that the insured had relied upon the receipt and that therefore the insurance company was estopped from denying coverage. *Id.* at 589-591. Here, by contrast, Rotundi did receive the notices of cancellation and did not receive anything that could have led him to rely on his late mailing of the check as being sufficient to reinstate his insurance.

2. *Waiver.* "Waiver consists of the insurer's voluntary or intentional relinquishment of a known right." *Merrimack Mut. Fire Ins. Co.* v. *Nonaka,* 414 Mass. at 189. "[It] arises by the act of an insurer, and whether or not [there] is a waiver must be determined from all of the facts and circumstances surrounding each case." *Alan Corp.* v. *International Surplus Lines Ins. Co.,* 823 F. Supp. 33, 42 (D. Mass. 1993). "To constitute a waiver, [the insured must demonstrate] an actual intention to relinquish an existing right, with knowledge, either actual or constructive, of its existence, or such conduct as to warrant an inference of . . . intention to relinquish." *Ibid.* See *Merrimack Mut. Fire Ins. Co.* v. *Nonaka,* 414 Mass. at 189. Despite his claims that the insurance company made an "unconditional acceptance" of his late payment, Rotundi presents no facts to support his conclusory allegations. Therefore, his waiver argument fails as well.

We note that in arguing that there was no waiver, the insurance company relies, at least in part, on its use of an independent vendor to process the thousands of checks it receives from customers every day. The vendor automatically deposits the checks upon receipt. It then transmits information about each payment to the insurance company's main frame computer on the evening of the day on which the check is deposited. The computer recalls and reviews the relevant policy holder's files. When, as here, the insurance company determines that the policy in question has been canceled, it waits for two weeks before sending a refund to ensure that the insured's check has cleared. Apparently, such an approach is common. See Windt, 1 Insurance Claims and Disputes § 6.35, at 795-796 & n.16 (4th ed. 2001) (no waiver "if insurer's acceptance of the premium payment or its other action inconsistent with terminating the policy was done unintentionally"). The insurance company argues that these procedures do not warrant any inferences regarding reinstatement of a canceled policy. On the record in this case, we need not decide whether this policy governing check deposits, without notice to the policy holders, would be sufficient to counter an argument of waiver.

*Conclusion.* In view of our decision on Rotundi's claims of estoppel and waiver, we need not reach his argument that his failure to file a "no loss statement" until sixteen months after his accident was "a ministerial function" of "no consequence." We note, however, that the submission of the form, subtitled "reinstatement warranty," is not only a "condition to reinstating [a] policy of insurance," but also constitutes notice to the insurance company of the insured's intent to reinstate his policy.

With no dispute about the facts, it was "[t]he meaning and effect of the various documents in evidence" that are at issue. *Samagaio* v. *Davidson,* 6

Mass. App. Ct. 773, 776 (1979). These are "matters of law for the court to decide," *ibid.*, and thus entirely appropriate for decision under Mass.R.Civ.P. 56(b) and (c), 365 Mass. 824 (1974). For the reasons set out above, we affirm the Superior Court judge's award of summary judgment for the insurance company. See *Bergendahl* v. *Massachusetts Elec. Co.*, 45 Mass. App. Ct. 715, 718 (1998), cert. denied, 528 U.S. 929 (1999).

*Judgment affirmed.*

*Kevin B. Nugent* for the plaintiff.
*Michael P. Giunta* for the defendant.