VANGUARD DIVERSIFIED, INC., Appellant, *v.* REVIEW COMPANY, Respondent.

Second Department, July 27, 1970.

*Kramer & Kaprow* (*David L. Weissman* and *Samuel Kramer* of counsel), for appellant.

*Hall, Casey, Dickler & Howley* (*William L. Maher* and *Leonard W. Hall* of counsel), for respondent.

HOPKINS, J. The defendant is the owner of real property in Nassau County known as Hook Creek Industrial Park. The plaintiff is a corporation engaged in the manufacture of steel desks and related items. On April 20, 1964 the defendant, as lessor, entered into a lease with another party as lessee and on June 7, 1965 the lessee transferred its interest in the leasehold to the plaintiff. On November 7, 1966 the plaintiff entered into an agreement with the defendant whereby the latter leased to the plaintiff additional space in the industrial park. The premises covered by these two leases consist of one building in which the plaintiff had its entire manufacturing facility.

Each lease terminated on May 31, 1969. However, it was provided that, absent default of its terms, covenants or conditions, the plaintiff at its option could renew the lease for a further term of five years by notice to be given not later than December 31, 1968. Pursuant to that provision the plaintiff notified the defendant in November of 1968 that it had elected to renew both leases for the further term of five years. The defendant refused to accede to the renewal, claiming that the plaintiff was in default under the terms of both leases.

The plaintiff then brought this declaratory judgment action to enforce its privilege to renew, as well as to require the defendant to pay accrued interest on security deposits, which interest the defendant had refused to pay because of the plaintiff's alleged default.

At the trial, the defendant produced evidence showing that the plaintiff had failed to cure certain violations placed against

the leased premises in April and August, 1968 by the New York State Department of Labor, Division of Industrial Safety Service. On the other hand, evidence produced by the plaintiff established that it had been in the process of curing each of these violations as of December 31, 1968, the last day upon which the plaintiff could exercise its privilege of renewal. Moreover, the plaintiff had appealed the open violations to the Board of Standards and Appeals prior to that date.[1]

The trial court, although finding that the plaintiff had made efforts in good faith to cure all the violations placed against the premises, nevertheless held that the plaintiff was in default under paragraph 6 of each lease, which stated in part: "Tenant at its sole expense shall comply with all laws, orders and regulations of Federal, State, County and Municipal Authorities, and with any direction of any public officer or officers, pursuant to law, which shall impose any violation, order or duty upon Landlord or Tenant with respect to demised premises or the use or occupation thereof."

In the opinion of the trial court this provision was a condition precedent to the privilege of exercising the option to renew, and evidence of substantial compliance was irrelevant. This we think was error.

Where the right to renew a lease depends on the performance of definite conditions or covenants, the right cannot be exercised unless there is full compliance (*People's Bank of City of N. Y.* v. *Mitchell,* 73 N. Y. 406; *McIntosh* v. *Rector, Churchwardens and Vestrymen of St. Philip's Church,* 120 N. Y. 7). The question is whether this rule is unvarying, no matter what may be the circumstances. In our view, the general rule does not apply to the specific covenant in issue. Strict performance of the covenant stated in the lease is tempered under the circumstances, since the covenant relates to compliance by the tenant with regulations made by governmental authorities, and binds the tenant to maintain the general state of repair of the property. Under these provisions, imposing a burden not susceptible of precisely defined content on the tenant, the tenant's right to renew is governed by the standard of substantial compliance (*Ogden* v. *Hamer,* 268 App. Div. 751).

The rationale underlying this exception to the rule of strict compliance usually accompanying leaseholds is bottomed upon

---

1. The State Inspector testified at the trial that certain of the violations were structural in nature, which under the provisions of the lease were the responsibility of the defendant.

a purposive approach to the law of landlord and tenant. The law does not favor forfeiture of a leasehold or of its renewal (cf. *Jones* v. *Gianferante,* 305 N. Y. 135; *Rizzo* v. *Morrison Motors,* 29 A D 2d 912). Thus, in the case of a covenant by the tenant to keep the premises in good repair, the intention of the parties is fairly inferable that the tenant, in possession of the premises, should protect the landlord from loss in the value of the property from deterioration. So too with the covenant to comply with governmental orders and regulations, the landlord has required the tenant to immunize him from the actions of the authorities by keeping the premises in compliance with proper standards of health and safety. However, where the covenant is substantially performed by the tenant and there is no evidence of injury to the landlord, the tenant should not lose all rights of renewal because of the variance from total satisfaction of the covenant (*Norman Riesenfeld, Inc.* v. *R-W Realty Co.,* 223 App. Div. 140, 148; *City of New York* v. *Skyway-Dyckman,* 22 A D 2d 506, 508).

The exception to the strict compliance rule in landlord and tenant law recognizes the sound distinction between general covenants and the particular covenant here in issue. The covenant requiring the tenant to comply with governmental regulations or to keep the premises in good repair rests upon an intention ancillary to the major consideration inherent in the lease. These covenants suggest a continuing performance during the term of the lease and imply a quality of performance which is not immediately ascertainable as being full or partial within the framework of compliance under the circumstances present at the time of demand to perform. This is to be contrasted with the covenant to build a dwelling house (*McIntosh* v. *Rector, Churchwardens and Vestrymen of St. Philip's Church,* 120 N. Y. 7, *supra* [where the tenant's assignee built a factory]), or the covenant to pay taxes (*People's Bank of City of N. Y.* v. *Mitchell,* 73 N. Y. 406, *supra* [where performance of the covenant is readily determinable]). Thus, in the case of the covenant in question, it was foreseeable, as indeed appears to be the fact under the evidence before the trial court, that complete and full performance by the tenant would be an impossibility prior to the last date upon which the exercise of the renewal option might be made. Under these circumstances, the law does not levy the price of forfeiture, but accedes to the realities. Partial performance tendered in good faith does not detract from the quality of the covenant; it merely means that full performance is in the offing and yet to be made. A contrary

rule would enable a landlord, acting in bad faith, to use last minute violations to deny the tenant's right to renew, contrary to the intention of the parties.

The defendant has cited several cases which stand for the proposition that equity will not relieve the default of a covenant (*First Nat. Stores* v. *Yellowstone Shopping Center*, 21 N Y 2d 630; *Matter of Feist & Feist* v. *Long Is. Studios*, 29 A D 2d 186; *Fidelity & Columbia Trust Co.* v. *Levin*, 128 Misc. 838, affd. 221 App. Div. 786, affd. 248 N. Y. 551). While this proposition has general validity, it does not touch the issue in this case. The substantial compliance rule, as it applies to the performance of a condition precedent to the renewal of a lease, is a legal rule. While it may be founded in part upon equitable principles, it is not a rule of equity which relieves nonperformance, but a rule of law which holds that substantial compliance with the covenant is adequate performance so as to maintain the covenantor's rights under the agreement.

Accordingly, the judgment should be reversed, on the law, and a new trial should be granted to determine whether the plaintiff did, in fact, substantially comply with the covenant in issue, with costs to abide the event. The questions of fact have not been considered on this appeal.

We note further that on November 18, 1968 the defendant, after rejecting the plaintiff's notice to renew, executed a written consent to a subletting to the plaintiff by another tenant in the industrial park of part of the space rented by the other tenant. While not pleaded, this fact was brought out at trial on the issue of whether the defendant was estopped from rejecting the plaintiff's exercise of its renewal option as to the two leases. Since a new trial is to be held, no prejudice will result from allowing the plaintiff, if it be so advised, to amend its complaint to include the claim of estoppel.

RABIN, Acting P. J., LATHAM, BRENNAN and BENJAMIN, JJ., concur.

Judgment reversed, on the law, and new trial granted to determine whether plaintiff did, in fact, substantially comply with the covenant in issue, with costs to abide the event. The questions of fact have not been considered on this appeal.