OPINION OF THE COURT
Arthur J. Cooperman, J.
May a tenant under a commercial lease that contains an option to renew be permitted to remain in possession even though it negligently failed to exercise that option for 17 months after the old term expired?
That is the main issue to be decided in this holdover proceeding.
Upon the trial of this matter, the following facts were uncontroverted: The original lease between the parties’ predecessors, dated June 1, 1965, provided for a term of 10-years, expiring on May 31, 1975. Respondent herein became the tenant in 1970 by virtue of an assignment of the original lease and executed a rider with the then landlord, on November 5, 1970, extending the term of the lease for another four years (until May 31,1979). The rental during the four-year extension was set at $375 per month.
Paragraph (c) of the rider provided as follows: “The Landlord agrees to grant the assignee, farmiloe-burke corporation, an option to extend the existing Lease for a further period of five (5) years commencing June 1, 1979, provided the terms and conditions of the existing Lease are complied with and provided further, that the Lease as so *691 extended will provide for payment of rental at the rate of four hundred ($400) dollars per month plus one half of any increase in taxes affecting said property over the amount of taxes being paid at the present time.”
On December 22,1978 petitioner landlord purchased the subject premises, the operation of which respondent tenant had continued as a tavern, as part of a larger parcel consisting of approximately 14 stores.
Prior to June 1, 1979, no written notice was given to the landlord by the tenant, exercising the five-year renewal option contained in the rider to the lease. After June 1, 1979, the landlord continued to forward the rent notice to the tenant, requesting monthly rent in the sum of $375, plus water charges, pursuant to the lease provisions and the extension effective June 1,1975 through May 31,1979. Tenant paid those monthly bills through October, 1980.
It was not until November, 1980, 17 months after the expiration of the four-year extension of the lease, that tenant forwarded a check to the landlord in the sum of $860, representing the $375 November payment, plus the $35 water charge, and $450, the aggregate difference in the $375 rental under the lease extension and the $400 rental under the option for the 18-month period, June, 1979 through November, 1980. The landlord returned the check by letter dated November 12, 1980.
On November 24, 1980 the landlord served a 30-day notice to terminate a month-to-month tenancy. This proceeding was thereafter instituted on January 16, 1981 by the service of a petition alleging respondent’s holdover status as of June 1, 1979.
Respondent’s answer was interposed orally to the effect that the option had been exercised by it and that, in any event, equity required dismissal of the petition in view of the potential damage to the respondent.
Petitioner’s sole witness, David Magier, its president, testified that the tenant never contacted him regarding renewal before or after June 1, 1979. It was his testimony that he advised respondent’s president Joseph Farmiloe when the latter telephoned in October, 1980 that the tenancy was then on a month-to-month basis. Thereafter, *692 the November rent payment check was received covering the unpaid difference in rent for the immediately preceding 18 months.
On the other hand, Farmiloe testified for respondent that that conversation took place after receipt of the letter rejecting the $860 payment in November, 1980. However, Farmiloe contended that in a May, 1978 meeting with Magier — at a time when the latter was a principal of another corporation that owned the subject premises — he advised Magier of his intention to remain in the property until 1984. In his testimony, Magier had said that while there was discussion of a new 10-year lease no mention was made by Farmiloe of exercising the option or staying in the premises into 1984.
Farmiloe testified that prior to this proceeding he had not looked at the lease since 1975. His sister, Eunice Burke, who kept the books and records of the corporation and paid the bills, testified that she had been unaware that the rent increased in June, 1979 pursuant to the renewal option.
Petitioner rests its right to recover possession upon the premise that respondent, having failed to take affirmative steps to renew the lease prior to the expiration of the original lease, has waived its right to renew.
Case law in this State would seem to uphold petitioner’s basic contention. The notice exercising an option is effective only if done so as prescribed (Vanguard Diversified v Review Co., 35 AD2d 102). It must be done timely and in the manner indicated in the lease (McVey v Simone, 73 AD2d 959). “However, the New York courts will relieve a tenant from the forfeiture of a valuable leasehold resulting from the tenant’s failure to exercise his renewal option in a timely manner if his failure to do so was the result of an honest mistake or similar excusable default, provided that the landlord will not be prejudiced by the late renewal. Sy Jack Realty Co. v. Pergament Syosset Corp. [27 NY2d 449]”. (Optivision, Inc. v Syracuse Shopping Center Assoc., 472 F Supp 665, 681.)
The Court of Appeals held in the Sy Jack case (supra, p 453), that since a long-standing location for a retail business is an important part of a goodwill of that enterprise, *693 and the tenant stands to lose a substantial and valuable asset, it should be relieved of a default brought about by an honest mistake or similar excusable default.
The court subsequently extended the principle of equitable relief to those cases where the tenant was guilty of neglect (J.N.A. Realty Corp. v Cross Bay Chelsea, 42 NY2d 392). “A tenant or mortgagor should not be denied equitable relief from the consequences of his own neglect or inadvertance if a forfeiture would result” (supra, p 398). “The rule applies even though the tenant or mortgagor, by his inadvertance, has neglected to perform an affirmative duty and thus breached a covenant in the agreement” (supra, p 399).
The neglect in failing to exercise the option in the J.N.A. Realty Corp. case extended for four and one-half months. Other delays have been for lesser periods of time (Sy Jack Realty Co. v Pergament Syosset Corp., 27 NY2d 449, supra [37 days]; Jones v Gianferante, 305 NY 135 [13 days]; Modlin v Town & Country Tux, 42 AD2d 586 [14 days]; Rizzo v Morrison Motors, 29 AD2d 912 [6 days]).
In view of the passage of 17 months from the end of the original lease term as extended, until November, 1980, this court must decide whether the principles set forth in Sy Jack (supra) and J.N.A. Realty Corp. (supra) are applicable here.
The tenant’s president testified that the business, a tavern, had been operating at the same location for 11 years. Upon taking possession in 1970, $18,500 was spent in improving the premises. He estimated that $32,000 had been put into the business over the years. The bar employs four people.
The landlord’s president, a licensed real estate broker, testified that in his opinion the premises were worth a rental of $1,000 per month. However, on cross-examination, it developed that he did not know the rental of over 15 similar establishments in the vicinity of tenant’s bar. Nor was he able to disclose the rental value of most of the approximately 14 stores immediately adjacent to tenant, all of which are owned by petitioner!
It was his further testimony that petitioner had not contracted for the sale of respondent’s premises or the line of stores owned by petitioner in the same building.
*694 Upon a fair preponderance of the credible evidence this court makes the following findings: Respondent failed to exercise its option to renew until November, 1980. Respondent was possessed of a valuable lease, it having made considerable improvements to the premises. In addition, if the location is lost, the tavern would undoubtedly lose a considerable amount of its customer goodwill. Significantly, petitioner has made no commitments with respect to the property and would not be prejudiced if the tenant is relieved of its default. Additionally, this court does not credit the testimony of petitioner’s president that the rental value of the property is worth $1,000 per month. Under the circumstances, it must be found that the rental value is in accord with the rental provided for in the renewal option — $400 per month.
Equitable relief must always depend upon the facts of the particular case (J.N.A. Realty Corp. v Cross Bay Chelsea, supra, p 400).
This court is satisfied that equitable relief can be granted here without damage to the landlord.
Moreover, this landlord continued to send rent notices to tenant for 18 months — requesting payment of the old rent. It accepted the old rent for the entire period of time — almost one third of the renewal period. It should not be permitted to require strict adherence to notice requirements for exercising the option (see Modlin v Town & Country Tux, supra).
Accordingly, the petition is dismissed. The lease is deemed to be in effect until May 31, 1984 and the parties are relegated to their rights thereunder.