WILLIAM D. PEAR & another[1] *vs.* DeWITT P. DAVENPORT
& another,[2] trustees.[3]

No. 05-P-1505.

Barnstable. May 16, 2006. - August 30, 2006.

Present: PERRETTA, DREBEN, & VUONO, JJ.

*Summary Process. Waiver. Landlord and Tenant,* Renewal of lease, Option to
purchase, Waiver. *Contract,* Lease of real estate, Option.

Lessors who by their conduct admittedly waived conditions with respect to
the lessees' tenancy regarding the late payment of rent did not thereby
waive a condition precedent for the lessees' exercise of an option to
purchase the premises, which required the lessees to comply with all provi-
sions of the lease; thus, the lessees were not entitled to specific performance
of the option contract and had no right to remain in the premises beyond
the term of the lease, and the lessors were entitled to possession. [241-245]

CIVIL ACTION commenced in the Superior Court Department on
October 1, 2004.

SUMMARY PROCESS. Complaint filed in the Barnstable Division
of the District Court Department on January 10, 2005.

After transfer of the summary process complaint to the
Superior Court Department, the cases were heard by *Richard F.
Connon,* J., on statements of agreed facts.

*E. James Veara* for the defendants.

*William J. Hunt* for the plaintiffs.

DREBEN, J. This is an appeal from two consolidated cases[4]: a
summary process action for possession brought by the lessor
trustees after the Pears (lessees) remained on the premises

---

[1]Jeffrey Pear.

[2]George C. Baldwin.

[3]Of the South Yarmouth Nominee Trust.

[4]The two appeals were consolidated in this court upon the defendants' mo-
tion under one docket number.

beyond the term of the lease; the other an action by the Pears seeking specific performance by reason of their claimed exercise of an option to purchase the premises.[5] The appeal presents the question whether the lessors, who by their conduct admittedly waived late payments of rent, thereby also waived a condition for the exercise of the lessees' option to purchase the demised premises. The option was exercisable "[p]rovided that LESSEE has complied with all provisions of this lease." After a trial without testimony in the summary process action — the evidence consisted of documents and stipulated facts — and argument on the lessees' summary judgment motion in their action for specific performance, a judge of the Superior Court held that when the Pears exercised the option to purchase, "the lease had not been terminated, . . . the provision in the lease that rental payments be timely was waived by the trustees' conduct, and . . . the Pears are entitled to specific performance."

1. *Undisputed facts.* The parties entered into a lease commencing October 1, 1999, and ending December 31, 2004, for premises to be used for the sale and repair of motor vehicles. For purposes of this opinion the two relevant provisions of the lease are clause 18(a) and clause 21(B) which read as follows:

"18. DEFAULT AND BANKRUPTCY. In the event that:

"(a) The LESSEE shall default in the payment of any installment of rent or other sum herein specified and such default shall continue for ten (10) days after written notice thereof; . . .

"then the LESSOR shall have the right thereafter, while such default continues, to re-enter and take complete possession of the leased premises, to declare the term of this lease[] ended. . . .

"21. OTHER PROVISIONS.

". . .

"(B) OPTION TO PURCHASE. Provided that LESSEE

---

[5]Other claims made by the Pears in their complaint were not pressed at trial or on appeal.

> has complied with all provisions of this lease, LESSEE
> shall have an option to purchase the demised premises
> exercisable at any time during the terms of this lease . . .
> upon written notice of exercise served upon LESSOR,
> whereupon the parties shall enter into a purchase and sale
> agreement providing . . . ."

On September 2, 2003, the Pears attempted to exercise the option by letter, but received a reply from one of the trustees (Davenport) stating, "not having read the lease . . . I don't believe you have an option" and indicating that the lessors were looking for a tax-free means of transferring the property. In response to an oral, hence ineffectual, attempt by the Pears, on April 9, 2004, to exercise the option, Davenport wrote that the trustees did not intend to sell because of tax consequences, but would provide the Pears with a very favorable five-year lease. On September 21, 2004, the attorney for the Pears wrote a letter purporting formally to exercise the option. Davenport's attorney responded on September 24, 2004, that, due to the Pears' "failure to comply with the provisions of the Lease, a necessary condition to their ability to exercise said option, they are precluded from exercising the same, and my clients have no obligation to convey title." The letter also stated that the Pears had not paid the rent due for September, 2004 ($4,000), and that if the default continued for ten days, the trust would exercise its rights, including regaining possession. The Pears tendered $8,000, of which $4,000 was returned.

As the judge pointed out in his memorandum of decision:

> "Over the term of the lease, the Pears were late in paying
> their rent on no less than fifty occasions. In spite of the
> tardiness, the Trustees always accepted the rent and never
> exercised [the] default option as contained in clause 18. It
> was only when the Pears exercised their option to purchase
> that the Trust invoked the provisions of clause 18."

2. *Discussion.* The judge categorized his determination of waiver as a question of fact, and, generally, waiver must be decided from all the facts and circumstances surrounding each case. *Rotundi* v. *Arbella Mut. Ins. Co.*, 54 Mass. App. Ct. 906, 907 (2002). Here, there is no dispute about the facts, and the

question is whether a waiver for purposes of clause 18(a) constitutes a waiver for purposes of clause 21(B). That question depends on the meaning and effect of the lease provisions and is a matter of law for the court to decide.[6] *Id.* at 907-908.

The closest case we have found in Massachusetts is *Saxeney* v. *Panis*, 239 Mass. 207 (1921). In that case there was no provision which made compliance with the terms of the lease a condition precedent to an option to renew. In holding that the waiver of a breach by the lessors (an assignment without the consent of the lessor) entitled the assignee to specific performance of a renewal option, the court contrasted the situation where the lease contains a condition precedent:

> "Apart from express provisions to the contrary in the lease, a landlord who has waived his right to terminate a lease because of breach of its covenants, cannot refuse to comply with the covenant of renewal contained therein. . . . The cases in which it has been held that the violation of covenants in a lease, although waived, prevents the exercise of a right of renewal do not apply. They are based on the provisions of the leases there considered and not here found, which made the compliance with the terms of the lease a condition precedent to a renewal. See *Finch* v. *Underwood*, 2 Ch. D. 310; *Bastin* v. *Bidwell*, 18 Ch. D. 238."

*Saxeney* v. *Panis, supra* at 210. (Citation omitted.) See *Derman Rug Co.* v. *Ruderman*, 4 Mass. App. Ct. 437, 441 (1976) (right to renew or extend may be expressly conditioned upon compliance by the tenant with any or all covenants of the lease).

In each of the two English cases cited in *Saxeney* v. *Panis, supra*, there was a condition precedent to the option to renew the lease. In *Finch* v. *Underwood*, 2 Ch. D. 310, 311 (1876), the landlord covenanted that he

> "shall and will, at the expiration of the term hereby granted

---

[6]The judge considered the willingness of the trustees to renew the lease for an additional five years "in conjunction with the acceptance without qualification of the late rental payments [to be] the type of conduct on the landlord's part that strongly suggests waiver of any rights it would have had with respect to late payments under the lease. This conduct shows a clear and decisive position of the landlord that it would not insist on adherence to the lease."

(in case the covenants and agreements on the said tenants' part shall have been duly observed and performed) grant unto the said tenants . . . a fresh lease. . . ."

The tenant breached the covenant to repair.[7] The judges (in several different opinions) reversed the decision below that had declared the tenant entitled to a new lease on the ground that the want of repair was trifling. They held that although receipt of the rent waived a forfeiture, there is a distinction between relieving against forfeiture and enforcing a privilege. That the provisions for forfeiture were waived, did not alter the conditions precedent for the renewal option. *Id.* at 316.

Similarly, in *Bastin* v. *Bidwell*, 18 Ch. D. 238 (1881), although the landlord had accepted rent despite the tenant's failure to paint as required, the landlord at the time of notice of exercise of the right of renewal did not have to ignore further breaches of the covenants to paint and a sum of money due for rent. The court held there was a precedent condition that the covenants be observed in order for the lessee to be entitled to have a renewed lease, the condition was not fulfilled, and the lessee did not become entitled to a renewed lease. *Id.* at 253.

Although there are a few cases to the contrary, American authorities as to the exercise of options seem, on the whole, consistent with the cited English cases. The cases hold that a waiver of the conditions with respect to the tenancy will not be a waiver of the conditions for the option unless the lessor makes a separate waiver of those conditions. See, e.g., *Larry* v. *Brown,* 153 Ala. 452, 457-458 (1907); *Bishop* v. *Melton,* 202 Ark. 732, 734, 736 (1941); *Brauer* v. *Freccia,* 159 Conn. 289, 292-294, 295 (1970); *Costello* v. *Curtis Building Partnership,* 864 So. 2d 1241, 1244 (Fl. Dist. Ct. App. 2004); *Clyde* v. *Ware,* 163 Ga. 917, 918-919 (1927); *Lake Shore Country Club* v. *Brand,* 339 Ill. 504, 506, 509-511, 521-526 (1930)[8]; *Freeman* v. *Rose,* 187 Neb. 176, 178 (1971); *Corbray* v. *Stevenson,* 98 Wash. 2d 410,

---

[7]Another breach identified as a ground for the rulings was the assignment of the lease from one of the tenants to the other tenant without license from the landlord.

[8]But note Illinois case contra, *McGill* v. *Wire Sales Co.,* 175 Ill. App. 3d 56, 60 (1988).

412, 413, 417 (1982); *Hafemann* v. *Korinek*, 266 Wis. 450, 455-456 (1954). Cf. *Kizer* v. *Burk*, 439 So. 2d 1051, 1053-1054 (La. 1980). Contra, e.g., *Bridges* v. *Jeffrey*, 437 S.W.2d 732, 733 (Ky. Ct. App. 1968); *Crystal Lake Cemetery Assn.* v. *Farnham*, 129 Minn. 1, 3 (1915); *Mack* v. *Dailey*, 67 Vt. 90, 91-92 (1893).

The rationale given by the Illinois court in *Lake Shore Country Club* v. *Brand, supra* at 521-522, was as follows:

> "An option contract is unilateral. Under it the optionee has a right to purchase upon the terms and under the conditions therein named. He is not, however, bound to purchase. Because but one party is bound thereby and the other is not, courts will exercise their discretion with great care in determining whether such a unilateral contract has been converted into a bilateral contract. . . . In order to avail himself of the right, the optionee must comply with the conditions set out in the option contract." (Citation omitted).

This rationale is in accord with the Massachusetts strict view of options. Thus, in *Westinghouse Bdcst. Co.* v. *New England Patriots Football Club, Inc.*, 10 Mass. App. Ct. 70, 73 (1980), we stated:

> "Generally, conditions for the exercise of an option require a more strict degree of adherence than may be the case in provisions of a bilateral contract. . . . The rationale for the lesser inclination of courts to inquire into the materiality of a breach of an option condition is that an optionee has a unilateral right. . . . He may choose to compel or not to compel the optionor to a course of performance which intervening facts . . . may have made unpalatable to the latter.[9] In the circumstances it may not be too much to ask that a person seeking to keep alive and to exercise option rights turn his corners squarely." (Citations omitted.)

Accordingly, we consider Massachusetts law, e.g., *Saxeney* v. *Panis, supra,* and the strict view of options, is more akin to the cases which require compliance with conditions precedent

---

[9]In the present case, adverse tax consequences.

before an option may be exercised and that a waiver for purposes of the tenancy is not a waiver for purposes of the option. Thus the Pears have not made out a waiver of the condition precedent of the option contract and hence are not entitled to specific performance. They also, therefore, do not have a right to remain in the premises and the lessors are entitled to possession. The judgments are reversed, and the matters remanded to the Superior Court for entry of judgments in accordance with this opinion.

*So ordered.*