TRINITY REALTY I, LLC *vs.* CHAZUMBA, LLC. No. 09-P-730. August 16, 2010. *Landlord and Tenant,* Extension of lease. *Real Property,* Option.

The plaintiff, Trinity Realty I, LLC (Trinity), appeals from a declaratory judgment, issued by a judge of the Superior Court after a bench trial, determining that Trinity's commercial tenant, Chazumba, LLC (Chazumba), validly exercised an option, contained in the lease, permitting it to extend the lease term for an additional five years. At issue is the effect of language in the option provision requiring that Chazumba "not be in default in the performance, fulfillment or observance of any of the terms or provisions of this lease" as of the date of exercise. See generally *Derman Rug Co.* v. *Ruderman,* 4 Mass. App. Ct. 437, 441 (1976) (lease may contain express conditions precedent to exercise of right of renewal or extension).

The judge found that Chazumba was not in full compliance with two lease covenants when it exercised the option.[1] However, after detailed examination of the surrounding facts, the judge also determined that neither of these infractions, which she characterized as inconsequential and immaterial, was significant or prejudicial to Trinity. On that basis, and because Chazumba would suffer substantial harm if it were unable to extend the lease, the judge ruled that it would be inequitable to deny Chazumba the right to exercise the option.[2]

On appeal, Trinity does not challenge any of the judge's findings.[3] Rather, it claims that the judge erred when she imported equitable considerations into her analysis. According to Trinity, the option provision must be read to mean

---

[1]Chazumba, which operated a Mexican restaurant, was allowing its sister company (another Trinity tenant, which operated a different restaurant in the same building) to make modest use of basement storage and utility space rented to Chazumba without Trinity's permission, notwithstanding a lease provision stating that the basement storage space was to be used only for storage of items intended for use by Chazumba's restaurant. At the time it sent its notice of exercise of option, on March 31, 2008, Chazumba also was in arrears in transmitting gross sales reports, required by another lease provision to be delivered to Trinity on a monthly basis. As the judge noted, these reports were used by Trinity to keep track of its tenants' financial condition, but not to compute rent. In any event, Trinity was aware that Chazumba was a successful operation that always paid its rent on time. On April 20, 2008, when reminded that its reports were overdue, Chazumba provided them the same day.

[2]The judge also ruled, in the alternative, that the option must be read as qualified by the notice and cure provisions contained in the lease termination provision. Because we decide the case on other grounds, we do not consider whether she was correct in this regard.

[3]Indeed, it could not do so, because it has not provided us with a transcript of the trial.

that *any* instance of noncompliance with lease covenants, regardless of its significance or magnitude, deprived Chazumba of the right to exercise the option.

Like the trial judge, we reject Trinity's position. We recognize that Massachusetts takes a "strict" view of options, and that a tenant's noncompliance with lease terms may result in its losing the privilege of exercising an option even if the same noncompliance would not warrant forfeiture of the existing tenancy. See *Pear* v. *Davenport*, 67 Mass. App. Ct. 239, 243-245 (2006) (chronic late payment of rent waived for purposes of termination, but not for purposes of option to purchase). That is not to say, however, that any departure whatsoever from lease requirements, no matter how minor and immaterial to the lessor, may be relied upon as a default that defeats the tenant's exercise of an option.

Although the judge viewed the case as one involving inconsequential and immaterial breaches, her subsidiary findings also may be understood as supporting the conclusion that Chazumba was in substantial compliance with the lease terms. Viewed in that way, Chazumba's performance was adequate to maintain its right to exercise the option — not as a matter of equity, but as a matter of law. As stated in a case by the New York Appellate Division, "[t]he substantial compliance rule, as it applies to the performance of a condition precedent to the renewal [or, as in this case, the extension] of a lease, is a legal rule. While it may be founded in part upon equitable principles, it is not a rule of equity which relieves nonperformance, but a rule of law which holds that substantial compliance with the covenant is adequate performance so as to maintain the covenantor's rights under the agreement." *Vanguard Diversified, Inc.* v. *Review Co.*, 35 A.D.2d 102, 106 (N.Y. 1970). See *Waldbaum, Inc.* v. *Fifth Ave. of Long Island Realty Assocs.*, 85 N.Y.2d 600, 607-608 (1995).

It makes no difference that the lease identified one of the covenants in question as a "major inducement" to Trinity, and the other as a "material inducement," particularly where boilerplate in this lease characterized *all* of the tenant's obligations under the lease as "material," "unique," "extraordinary," and "of the essence." If such characterizations were interpreted to mean that nothing less than perfection was demanded of Chazumba in order to retain the option to extend, the option would be virtually meaningless, as Trinity could seize on any number of trivial, technical violations of the lease in order to avoid it.[4]

Trinity separately claims that Chazumba forfeited the option when it failed to modify its kitchen ventilation system by installing a grease guard and vent stack extension as agreed in a mediated settlement of an earlier dispute between the parties. Even if we assume that noncompliance with the terms of

---

[4]Examples given by the trial judge were the failure to clean one of the restaurant's windows, the improper disposal of a piece of litter, or an imperfectly sealed container of food stored in Chazumba's basement storage area. We contrast these examples with defaults of a significant nature that go to the heart of the parties' agreement, such as the repeated failure to pay rent on time, see *Pear* v. *Davenport*, 67 Mass. App. Ct. at 241, or the failure to exercise the option in the manner prescribed in the lease. See, e.g., *Westinghouse Bdcst. Co.* v. *New England Patriots Football Club, Inc.*, 10 Mass. App. Ct. 70, 73 (1980) ("cases and authorities which suggest vigorous compliance with the requirements of option conditions . . . tend to deal with flaws in the exercise of an option").

the settlement would constitute a material default of the lease, we agree with the judge that Chazumba was not in breach, because its delayed completion of the ventilation system modifications was excused. The judge found that Chazumba had obtained the grease guard and vent stack extension within the requisite time frame for their installation and made diligent, good faith efforts to obtain all additional information requested by Trinity as a condition of approving the installation, but that it could not go ahead with the installation without Trinity's permission, which was not forthcoming until after the agreed-upon deadline. Where Trinity's withholding of consent delayed Chazumba's completion of the project, Trinity cannot avoid Chazumba's exercise of the option on the ground that the work was not finished on time. Cf. *Lobosco* v. *Donovan*, 30 Mass. App. Ct. 53, 56 (1991).

*Judgment affirmed.*

*James Gray Wagner* for the plaintiff.
*Sanford F. Remz* for the defendant.