NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

21-P-1054                                    Appeals Court

   SOURCING UNLIMITED, INC.[1] vs. CUMMINGS PROPERTIES, LLC.


No. 21-P-1054.

Essex.      November 3, 2022. - June 7, 2023.

Present:  Neyman, Desmond, & Grant, JJ.


Contract, Lease of real estate, Construction of contract,
     Option.  Real Property, Lease, Option.  Landlord and
     Tenant, Renewal of lease.  Notice, Timeliness.  Electronic
     Mail.


     Civil action commenced in the Superior Court Department on
January 24, 2017.

     The case was heard by Janice W. Howe, J., on motions for
summary judgment, and entry of separate and final judgment was
ordered by her.


     Jonathan D.H. Lamb for the defendant.
     Orestes G. Brown for the plaintiff.


     NEYMAN, J.  We consider whether electronic mail (e-mail)

communications from a tenant to its landlord constituted

effective notice to invoke a nonrenewal option to prevent

_____

     [1] Doing business as Jumpsource.

automatic five-year renewal of a commercial lease.  Although the "notice" provision in the lease prohibited electronic notice, we nonetheless hold that the e-mail communications constituted effective notice where (1) it is undisputed that the landlord received timely and unequivocal written notice of the tenant's decision not to extend the lease; (2) the nonconformity in the method of delivery of the notice neither was consequential nor contravened the crux of the option provision; and (3) the option provision at issue was not exclusive to the tenant but was a mutual option that could be exercised by either party.  Thus, we affirm.

Background.  1.  The lease.  On or about April 14, 2010, the plaintiff-tenant, Sourcing Unlimited, Inc., doing business as Jumpsource (Jumpsource), and the defendant-landlord, Cummings Properties, LLC (Cummings), executed a commercial lease for office space in Beverly.  The lease was extended by agreement through November 30, 2016.  Section 30 of the lease contained an automatic extension provision stating as follows:

> "AUTOMATIC FIVE-YEAR EXTENSIONS.  This lease, including all terms, conditions, escalations, etc. shall be automatically extended for additional successive periods of five years each unless LESSOR or LESSEE serves written notice, either party to the other, of either party's option not to so extend this lease.  The time for serving such written notice shall be not more than 12 months or less than six months prior to the expiration of the then current lease term.  Time is of the essence."

Section 21 of the lease contained a general notice provision that provided as follows:

> "NOTICE. . . .  Any notice from LESSEE to LESSOR under this lease shall be given in writing and shall be deemed duly served only when served by constable, or delivered to LESSOR by certified or registered mail, return receipt requested, postage prepaid, or by recognized courier service with a receipt therefor, addressed to LESSOR at [street address] or to the last address designated by LESSOR.  No oral, facsimile or electronic notice shall have any force or effect.  Time is of the essence in the service or any notice."

The parties agree that to exercise its nonrenewal option under section 30 -- thereby preventing the lease term from automatically extending for an additional five-year period -- Jumpsource had to provide written notice to Cummings between December 1, 2015, and May 30, 2016 (i.e., "not more than 12 months or less than six months prior to the expiration of the then current lease term").

2.  The e-mail communications.  In December of 2015, and January of 2016, Jumpsource and Cummings discussed the possibility of Jumpsource relocating from its then current office space to a different unit within Cummings's portfolio and extending its term lease, but the parties did not agree to terms on any such relocation or extension.  On January 12, 2016, Jumpsource's vice-president of sales sent an e-mail to Cummings's account manager stating:

> "At this time [Jumpsource has] decided we are closing the office in Beverly at the end of the contract (Nov 2016).

> We are trying to get all the employees down here to FL.
> Thanks for the help though!"

Cummings's account manager responded the same day, in relevant part, as follows:

> "Thanks for your message. Please note that, while Jumpsource's lease is currently scheduled to terminate on November 30, 2016, you should consult the lease for more information, as many of our leases contain extension, renewal, and/or cancellation options. Such provisions may alter the lease end date or otherwise result in the lease not terminating on the date referenced above.
>
> "Despite your note, if there is any interest in maintaining even a much smaller one- or two-person office here at Cummings Center, please let me know, as we have some nice options in the range of 200 to 500 leasable square feet."

On April 21, 2016, Cummings sent Jumpsource a letter notifying Jumpsource that it "does not have adequate insurance on file" and thus was in default of the lease. The letter further advised that Jumpsource could cure the default, that Cummings could purchase insurance on Jumpsource's behalf, or that Cummings could "declare the term of your occupancy ended." Jumpsource promptly sent an e-mail to Cummings about the letter, noting that its lease would expire on November 30, 2016, and asking, "How do you suggest we proceed if we only need office insurance for another 6 months or so? As you know we will not be renewing our Cummings Center lease . . . ." Cummings replied, in relevant part, as follows:

> "[I]n accordance with the notice provisions of your lease, we are unable to accept non-renewal notices that are transmitted by email. Per Sections 21 and 30 of your

lease, notice must be sent within the required time period via certified mail or recognized overnight courier. . . . If you wish to terminate your lease on November 30, 2016, please deliver Cummings . . . proper notice as and when required under the lease.  In the meantime, please note that all terms of your lease, including all extension, renewal, and/or cancellation options contained therein, remain in full force and effect."

On August 4, 2016, in response to an e-mail from Cummings regarding August 2016 rent, Jumpsource sent an e-mail stating, in part, "I'll mail a check to you here from Florida.  Sorry for the mixup [sic].  What's the move out process like?  As you know we aren't renewing our lease and the final date is November 30."  Cummings responded by e-mail as follows:

"Thanks in advance for mailing the check.  I will update our accounting department.

"Regarding the currently scheduled lease termination date, as referenced in my prior emails, Section 30 of Jumpsource's lease provides that the term of the lease shall automatically extend for additional successive five-year periods, unless either party provides timely written notice as required by the lease exercising its option that the lease not so extend.  Such written notice must be served by one of the methods identified in Section 21 of the lease between six and 12 months prior to the then-current lease expiration date.

"In this case, in order for the lease to terminate on November 30, 2016, written notice to preclude the automatic extension would need to have been served on or before May 30, 2016.  As we never received any such written notice as required by the lease, the lease has extended through the currently scheduled termination date of November 30, 2021.  Please note that all terms of your lease, including all extension, renewal, and/or cancellation options contained therein, remain in full force and effect.

"As always, feel free to contact me with any questions."

On November 30, 2016, Jumpsource vacated the premises. There is no allegation that Cummings was unable to lease the premises or was prejudiced by Jumpsource's purported violation of the contract.

3. Prior proceedings. On January 24, 2017, Jumpsource commenced the present action in the Superior Court seeking a declaratory judgment that it had provided sufficient and proper notice of its option not to renew the lease and alleging a violation of G. L. c. 93A.[2] Cummings filed an answer and counterclaim seeking a declaratory judgment that Jumpsource failed to provide proper legal notice in accordance with the lease of its decision to opt out of the five-year automatic renewal and alleging breach of contract. The parties filed cross-motions for partial summary judgment[3] and, in their joint statement of material facts, defined the discrete issue of law as follows: "What is the legal effect, if any, of Jumpsource's emails to Cummings to opt out of the lease's automatic extension, where the notice provision in the lease required

---

[2] Cummings first filed a summary process action against Jumpsource in the District Court. That action was dismissed after the parties stipulated to Cummings's right to immediate possession of the premises. The parties then initiated the Superior Court action.

[3] The parties filed a joint statement of material facts, none of which was disputed by either party.

adherence to specified methods of notice to the exclusion of other modes of transmission (including electronic and oral notice)?"  A Superior Court judge ruled that the e-mail communications from Jumpsource to Cummings constituted effective and timely notice to opt out of the lease's automatic extension, and thus allowed Jumpsource's motion and denied Cummings's motion.[4]  Partial summary judgment entered in favor of Jumpsource and against Cummings.  At the parties' joint request, the judge entered separate and final judgment in favor of Jumpsource.[5]  Cummings timely appealed.

Discussion.  1.  Standard of review.  a.  Summary judgment.  Summary judgment is appropriate where "there are no issues of material fact, and . . . the moving party is entitled to judgment as a matter of law."  Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002).  "We review a decision to grant summary judgment de novo."  Boazova v. Safety Ins. Co., 462 Mass. 346, 350 (2012).  "[W]here both parties have moved for

_____

[4] In her decision, the judge briefly addressed the issue of waiver, and determined that "there is no evidence Cummings waived the notice requirements of the [l]ease."  Where we hold that the e-mail communications constituted effective notice of the option, we decline to reach the waiver issue.

[5] The parties represented that the allowance of Jumpsource's motion for partial summary judgment effectively mooted Cummings's counterclaims for declaratory judgment and breach of contract subject to this appeal.  Their joint motion indicated that only Jumpsource's claim pursuant to G. L. c. 93A would remain and that it would be stayed pending this appeal.

summary judgment, the evidence is viewed in the light most favorable to the party against whom judgment [has entered]" (citation omitted).  Id.  "A party seeking summary judgment may satisfy its burden of demonstrating the absence of triable issues by showing that the party opposing the motion has no reasonable expectation of proving an essential element of its case" (citation omitted).  Id.

b.  Contract interpretation.  The parties agree that the relevant lease provisions are unambiguous.  "The interpretation of an unambiguous written contract constitutes a ruling of law that is subject to plenary review on appeal."  President & Fellows of Harvard College v. PECO Energy Co., 57 Mass. App. Ct. 888, 891 (2003).  "Where there is no ambiguity, we construe the words of a contract in their usual and ordinary sense" (quotation and citation omitted).  DeWolfe v. Hingham Ctr., Ltd., 464 Mass. 795, 803 (2013).  See Shea v. Bay State Gas Co., 383 Mass. 218, 225 (1981) (court must construe contract language "to give it reasonable meaning wherever possible").  In addition, "[w]hat constitutes timely notice under [a lease] is a matter of contract interpretation and is therefore 'a matter of law for the court.'"  Pilgrim Ins. Co. v. Molard, 73 Mass. App. Ct. 326, 331 n.8 (2008), quoting Royal-Globe Ins. Co. v. Craven, 411 Mass. 629, 632 (1992).  Therefore, we likewise review this contract interpretation dispute de novo.  See Baby Furniture

Warehouse Store, Inc. v. Meubles D&F Ltée, 75 Mass. App. Ct. 27, 29 (2009).

2. Analysis. Cummings contends that Jumpsource's e-mail communications constituted ineffective notice to invoke the nonrenewal option in the lease because Massachusetts law requires an optionee to strictly comply with the terms of an option. Cummings argues that insofar as the lease specified acceptable methods of notice and expressly excluded other methods, including "electronic notice," Jumpsource did not strictly comply with the plain terms of the lease, and thus the notice was insufficient as a matter of law.

Jumpsource responds that the purpose of the option provision was fulfilled because Cummings had actual notice well within the option period that Jumpsource had exercised its option not to renew. Jumpsource argues that our jurisprudence makes clear that a party's timely receipt of actual notice is generally not defeated by a nonconforming delivery method. Although Jumpsource's view is somewhat overbroad, it has the better argument in the present case.

We begin our analysis with the plain language of the agreement, which states that the lease "shall be automatically extended" for an additional five-year lease term unless either party "serves written notice . . . of either party's option not to so extend this lease" within a specified timeframe. This

provision gave both the landlord and the tenant the "option" to cancel the automatic renewal of the lease by providing timely written notice.  Unlike many leases that contain affirmative options to purchase property or to terminate, renew, or extend a lease, the provision here is framed as an "option not to so extend" the automatic renewal of the lease.  See Pear v. Davenport, 67 Mass. App. Ct. 239, 240-241 (2006) (tenant's option to purchase); Qureshi v. Fiske Capital Mgmt., 59 Mass. App. Ct. 463, 465-466 (2003) (option to extend); Loitherstein v. International Business Machs. Corp., 11 Mass. App. Ct. 91, 92 (1980) (tenant's "right to terminate" ten-year lease "at the end of the fifth year of the initial term"); Gerson Realty Inc. v. Casaly, 2 Mass. App. Ct. 875 (1974) (tenant's option to renew lease).  Contrast Patriot Power, LLC v. New Rounder, LLC, 91 Mass. App. Ct. 175, 176 (2017) (analyzing "termination option" providing that lease "shall be automatically extended for additional successive Renewal Terms of one (1) year each unless Tenant or Landlord serves written notice . . . of either party's option not to so extend the Lease" within specified timeframe). Despite the somewhat awkward phraseology, both parties agree that the language is unambiguous.  The parties further treat the wording as an "option" not to renew the lease, and we treat it as such for purposes of our analysis herein.

"Generally, conditions for the exercise of an option require a more strict degree of adherence than may be the case in provisions of a bilateral contract."  Westinghouse Broadcasting Co. v. New England Patriots Football Club, Inc., 10 Mass. App. Ct. 70, 73 (1980) (Westinghouse).  We have noted that because an optionee holds a unilateral right, there is a "lesser inclination of courts to inquire into the materiality of a breach of an option condition."  Id.  "In [such] circumstances it may not be too much to ask that a person seeking to . . . exercise option rights turn his corners squarely."  Id.  See Trinity Realty I, LLC v. Chazumba, LLC, 77 Mass. App. Ct. 911, 912 (2010) ("Massachusetts takes a 'strict' view of options, and . . . a tenant's noncompliance with lease terms may result in its losing the privilege of exercising an option even if the same noncompliance would not warrant forfeiture of the existing tenancy").  See also Loitherstein, 11 Mass. App. Ct. at 94.  Thus, as a general rule, option provisions are strictly construed such that we typically do not look to claims of materiality with respect to their enforcement.

However, Massachusetts courts have recognized limitations to the concept of strict compliance with options.  In some contexts, where a nonconformity does not contravene the crux of an option provision, we have considered the nature and materiality of minor deviations.  This is particularly so as to

the method of delivery of notice.  For example, in Gerson Realty Inc., 2 Mass. App. Ct. at 875, we considered whether a tenant had effectively exercised its option to renew a lease where the tenant provided notice via certified mail, but the lease required that "such notice . . . shall not be deemed to have been duly given or served unless in writing and forwarded by registered mail."  Id.  We held that the notice of renewal by certified mail was effective because "[t]he function of a requirement that notice be transmitted by registered mail is to provide a means of resolving disputes as to the fact of delivery of the notice."  Id.  Where the fact and timeliness of delivery were not in dispute, the differences between the manner of notice required and the notice provided were "of no consequence."  Id.

Similarly, in Computune, Inc. v. Tocio, 44 Mass. App. Ct. 489, 493 (1998), we held that written notice delivered by Federal Express, instead of by certified or registered mail as required by the lease, constituted timely and effective exercise of a lease option.  Here again, we reasoned that where the notice to extend the lease was in writing, timely, and delivered to the correct address, "the method by which the written notice was delivered [did] not result in a material violation of the lease."  Id.  We further recognized that, consistent with our precedent, "[d]elivery by Federal Express, in the circumstances

present here, serves the same function and provides the same proof of delivery as certified or registered mail." Id.

In Trinity Realty I, LLC, 77 Mass. App. Ct. at 911, we analyzed an option provision requiring that the tenant "not be in default in the performance, fulfillment or observance of any of the terms or provisions of this lease" to exercise the option to extend the lease term. Although the tenant "was not in full compliance with two lease covenants when it exercised the option," we held that the tenant's substantial compliance with the lease terms constituted adequate performance to maintain its rights under the lease, including its right to exercise the option provision. Id. at 912. We further distinguished "defaults of a significant nature" from technical violations that do not "go to the heart of the parties' agreement." Id. at 912 & n.4.[6]

Finally, in Cadillac Auto Co. of Boston v. Stout, 20 Mass. App. Ct. 906 (1985), we analyzed an option to purchase real estate requiring, inter alia, that the option be exercised "by

---

[6] Among the examples we provided of "defaults of a significant nature" was "the failure to exercise the option in the manner prescribed in the lease." Trinity Realty I, LLC, 77 Mass. App. Ct. at 912 n.4. As discussed infra, however, our jurisprudence has distinguished material flaws in the exercise of an option from those that are immaterial. In circumstances like the present, a nonconforming delivery method -- when timely receipt of actual notice is undisputed -- is not a default that goes "to the heart of the parties' agreement." Id.

notice in writing," (1) given within a defined timeframe, (2) "specifying a date and hour for delivery of the deed," and (3) committing to a closing within a specified period.  Id. at 906, 907.  Stout, the holder of the option, provided a letter that did not specify a date and hour for delivery of the deed, and did not in clear terms commit Stout to a closing within the specified period.  Id. at 907.  Consequently, we held that the deviations from the option provision were "not immaterial" and, on that basis, affirmed the Land Court's determination that Stout's letter was ineffective to exercise the option.  Id.

It is clear from this line of cases that our jurisprudence has distinguished material flaws in the exercise of an option from "immaterial," or "inconsequential," deviations, particularly those involving the method of delivery of notice where neither the timeliness nor fact of delivery of notice were disputed.  See Westinghouse, 10 Mass. App. Ct. at 73-74 (comparing flaws in exercise of option such as failure to give timely notice, failure to include purchase price, and failure to provide written notice and cashier's check, to nonconforming delivery method in Gerson Realty Inc., 2 Mass. App. Ct. at 875).  Such minor nonconformities as identified in Gerson have typically not been held to render ineffective duly received notice.  See e.g., Computune, Inc., 44 Mass. App. Ct. at 493.

Of further note, our precedent has also recognized that the rationale for requiring strict compliance with the exercise of an option stems from the creation of a "unilateral" right exclusively held by the holder of the option. See Loitherstein, 11 Mass. App. Ct. at 94 (termination option held by tenant "created a conditional limitation on the leasehold estate; a right which was unilateral in nature, exclusively for [tenant]'s benefit, and thus to be strictly construed"). See also Westinghouse, 10 Mass. App. Ct. at 73. Here, no such exclusivity existed, as both Cummings and Jumpsource held an option not to extend the lease. Accordingly, in the present context where either party may exercise the option, the policy underlying the rule of strict compliance is somewhat less compelling.

Keeping this wealth of precedent in mind, we look to the gravamen of the option provision in the lease, which is to require the party exercising the option to timely inform the other party, in writing, that it is not renewing the lease.[7] It

---

[7] We note that the option provision at section 30 of the lease required Jumpsource to serve "written notice" of its option not to extend the lease, and to do so "not more than 12 months or less than six months prior to the expiration of the then current lease term." The option provision does not otherwise define the required method of notice. Rather, the "notice" provision at section 21 of the lease is a separate stand-alone provision that applies to any and all notices to be provided by Jumpsource to Cummings under the lease. Where we construe the lease as a whole, see East Coast Aviation Corp. v.

is undisputed that Jumpsource did so, and Cummings does not contest the timeliness or fact of its receipt of the unambiguous written notice of Jumpsource's exercise of the option.[8]  Indeed, despite Cummings's argument that settled law and public policy demand, to ensure commercial certainty, that parties to a contract be strictly held to the language they chose, Cummings provides no persuasive argument that Jumpsource's multiple communications within the opt-out period created any uncertainty for Cummings.  See Korey v. Sheff, 3 Mass. App. Ct. 266, 268 n.5 (1975) ("It is generally held that timely notice of intent to exercise an option to renew is effective upon receipt of such notice").

Cummings claims that the present case is distinguishable from our precedent because the "notice" provision here specifies that "[n]o oral, facsimile or electronic notice shall have any force or effect."  We disagree, as our cases have held nonconforming notice to be effective even where the notice provision's language provided exclusive methods of delivery. See, e.g., Gerson Realty Inc., 2 Mass. App. Ct. at 875

---

Massachusetts Port Authy., 346 Mass. 699, 705 (1964), whether the details of the notice requirements are contained within the option provision or as a stand-alone provision is not dispositive.

[8] Nor does Cummings contend that an e-mail message does not constitute "written" notice.

(nonconforming notice was effective even though lease specified that notice "shall not be deemed to have been duly given or served <u>unless</u> in writing and forwarded by registered mail" [emphasis added]).  In these circumstances, where Jumpsource provided actual written notice of its decision not to extend the lease within the time prescribed by the lease, the nonrenewal option was not exclusive to Jumpsource, and there is no dispute that Cummings received and acknowledged the e-mail notice, the distinction proffered by Cummings does not alter the analysis or the result we reach.

Cummings also contends that policy reasons dictate that the parties strictly adhere to the precise terms of the option provision.  For example, Cummings posits that our holding would enable tenants to misdirect landlords about their true intentions as a negotiating strategy.[9]  Cummings further suggests that under our holding, any notice -- whether via oral communication or otherwise -- would invariably be sufficient to exercise the option.  We disagree.  We do not intend to suggest that any and all written communications of a party's intent to

---

[9] We reject Cummings's claim that Jumpsource could have "changed its mind" after sending the e-mail messages expressing its intent to invoke the option and subsequently relied on the lease language to argue that its electronic communication was ineffective.  Had Jumpsource done so in the present factual scenario under the same commercial lease, where the notice was clear, repeated, and acknowledged, Jumpsource would have fared no better than Cummings.

exercise an option would be sufficient to satisfy the terms of that option.  Likewise, we do not hold that an oral statement of a party's intent to exercise an option would be sufficient (and indeed it would not be so) where the contract requires the notice to be in writing.  To be clear, we hold only that on the undisputed summary judgment record before us, the clear, timely, unambiguous written notice provided by the tenant and received and acknowledged by the landlord constituted effective notice to invoke the lease nonrenewal option before us.[10]

The judgment dated September 17, 2021, is affirmed.

<u>So ordered</u>.

---

[10] In her decision allowing partial summary judgment, the judge stated that "[t]here are no blameless parties here."  She further noted that Jumpsource failed to provide notice via the methods specified in the lease, "a small act that would have avoided costly litigation," while Cummings, despite having "actual notice of Jumpsource's intent to terminate the Lease . . . , covered its ears like a child unwilling to listen to a piece of unwelcome information."  Although our review is de novo, we concur with the judge's assessment in this regard.  Protracted and needless litigation would have been avoided through minimal reasonable conduct by either party.